Barbara SANDS, Plaintiff-Respondent-Petitioner,

v.

The WHITNALL SCHOOL DISTRICT,
Defendant-Appellant.

Supreme Court

*No. 2005AP1026. Oral argument December 11, 2007.
—Decided July 11, 2008.*

2008 WI 89

(Also reported in 754 N.W.2d 439.)

1

For the plaintiff-respondent-petitioner there were briefs by *Thomas Nelson* and *Hawks Quindel Ehlke & Perry, S.C.,* Milwaukee, and oral argument by *Thomas Nelson.*

For the defendant-appellant there were briefs by *Jeffrey A. Schmeckpeper, Patti J. Kurth,* and *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee, and oral argument by *Jeffrey A. Schmeckpeper.*

An amicus curiae brief was filed by *Robert J. Dreps, Patricia L. Wheeler,* and *Godfrey & Kahn, S.C.,* Madison, on behalf of the Wisconsin Freedom of Information Council, the Wisconsin Broadcasters Association, and the Wisconsin Newspaper Association.

An amicus curiae brief was filed by *Bruce A. Olsen,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general, on behalf of the Wisconsin Department of Justice.

¶ 1. LOUIS B. BUTLER, JR., J. This is a review of a published court of appeals opinion[1] reversing and remanding a non-final order of the Milwaukee County Circuit Court, the Honorable Clare L. Fiorenza presiding. The circuit court issued an order directing the

---

[1] *Sands v. Whitnall School District,* 2007 WI App 3, 298 Wis. 2d 534, 728 N.W.2d 15.

Whitnall School District (the District) to provide answers to interrogatories from Barbara Sands (Sands) regarding a discussion about her employment during a closed session of the Whitnall School Board (the Board).

¶ 2. The District appealed, claiming that the circuit court granted Sands' motion to compel based on its erroneous failure to recognize that discussions transpiring during a closed meeting are privileged under the provisions of Wis. Stat. § 19.85(2005–06)[2] authorizing the closed meeting, or, alternatively, under a "deliberative process privilege." The court of appeals agreed, holding that the language of § 19.85 indicates that the legislature intended to protect the substance of closed sessions from public disclosure, and that such an implicit privilege is authorized by Wis. Stat. § 905.01. *Sands v. Whitnall School District*, 2007 WI App 3, ¶¶ 10, 15, 298 Wis. 2d 534, 728 N.W.2d 15. The court of appeals reversed the circuit court's order and remanded the cause with directions to deny Sands' motion to compel. *Id.*, ¶ 15.

¶ 3. Sands petitioned this court for review. She argues that it was the court of appeals, not the circuit court, which issued an erroneous ruling because there is neither a "deliberative process privilege" in Wisconsin nor any other privilege implicit in Wis. Stat. § 19.85 shielding the contents of closed sessions from discovery.

¶ 4. We agree with Sands and conclude that the court of appeals decision was based on an erroneous interpretation of Wis. Stat. §§ 19.85 and 905.01. Consequently, we reverse the decision of the court of appeals and remand for further proceedings consistent with this opinion.

---

[2] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

¶ 5. The pertinent facts and procedural background of this case are not in dispute. In 1998, the Whitnall School District hired Sands to run the District's Gifted and Talented Education Program.[3] After closed session meetings on April 29, 2002, and May 13, 2002, addressing Sands' employment, the Board voted in an open session not to renew Sands' contract. Sands was informed of the decision three days later, on May 16, 2002.

¶ 6. On April 23, 2004, Sands filed a lawsuit stating that because she had served as an "administrator" within the meaning of Wis. Stat. § 118.24(6),[4] she was entitled to, but had been denied, that statute's protections. Specifically, the complaint alleged that because Sands did not receive four-months' notice that

---

[3] Although the parties disagree about Sands' title and the extent to which her position was primarily administrative in nature, they agree that at least some of her duties included monitoring and instructing classroom teachers on units of instruction for students in the program, developing curricula to be delivered by the teachers, developing and administering methods of identifying students for the program, planning and administering the use of the program's budget, and acting as a substitute administrator-principal.

[4] Wisconsin Stat. § 118.24(6) provides in pertinent part:

The employment contract of any person described under sub. (1) shall be in writing and filed with the school district clerk. At least 4 months prior to the expiration of the employment contract, the employing school board shall give notice in writing of either renewal of the contract or of refusal to renew such person's contract. If no such notice is given, the contract then in force shall continue in force for 2 years. Any such person who receives notice of renewal or who does not receive notice of renewal or refusal to renew the person's contract at least 4 months before the contract expiration shall accept or reject the contract in writing on or before a date 3 months prior to the contract expiration. . . .

her contract would not be renewed, the District had violated her rights under § 118.24(6), and she was therefore entitled to receive a salary and certain benefits, including an early retirement option and post-retirement health insurance, for two years.

¶ 7. In its answer, the District denied that Sands' job duties were solely or principally administrative and that her contract was subject to Wis. Stat. § 118.24. The District also alleged affirmative defenses, including unsatisfactory job performance by Sands, her knowledge that failure to improve her job performance would result in a decision not to renew her contract, the lack of any guaranteed salary or benefits to Sands, Sands' own failure to comply with § 118.24, and the applicability of the doctrine of laches.

¶ 8. During discovery, the District produced documents requested by Sands, but refused to provide complete answers to the following interrogatories seeking content from the two closed sessions:[5]

> INTERROGATORY NO. 2: Separately, for each person identified in response to interrogatory 1 [those present at the closed sessions], state the substance of the person's knowledge about the decision not to renew Dr. Sands' contract.

---

[5] Sands does not dispute that the meetings were properly held in closed session pursuant to Wis. Stat. § 19.85, which provides in pertinent part:

> (1) ... A closed session may be held for any of the following purposes:
>
> ....
>
> (c) Considering employment, promotion, compensation or performance evaluation data of any public employee over which the governmental body has jurisdiction or exercises responsibility.

INTERROGATORY NO. 5: Identify each person who spoke during the deliberations that resulted in the school board's decision not to renew Dr. Sands' contract.

INTERROGATORY No. 6: Separately for each person identified in response to question 5, above, state the substance of what he or she said about renewing Dr. Sands' contract.

In response to all three requests, the District declined to answer, claiming that the information was privileged under Wis. Stat. § 19.85 and under a "deliberative process privilege."[6] Sands filed a motion to compel,[7] and the District opposed the motion, repeating its privilege claims.

¶ 9. The circuit court ruled in favor of Sands, concluding that the District was required to provide the information requested in the interrogatories. The court explained that it was granting the motion to compel because privileges in Wisconsin are narrowly construed; because Wisconsin has never recognized a deliberative

---

[6] The District, notably, did not object on the basis of relevance and has not raised a relevance issue on appeal.

[7] Originally, Sands' motion requested that the District be ordered to answer all three interrogatories. However, in correspondence with the District's counsel negotiating proposed order language and in the hearing on her motion, Sands' attorney subsequently dropped all reference to Interrogatory No. 2 and instead limited the motion to compel request to Interrogatories No. 5 and 6. When, as requested by the parties, the language of the court's order was limited to Interrogatories No. 5 and 6, with no reference to Interrogatory No. 2, Sands similarly did not object. Consequently, although she at times appears to attempt to resurrect her original request related to Interrogatory No. 2, this court will not address the substance of such arguments related to Interrogatory No. 2, which we construe to have previously been waived.

10

process privilege; and because, as a litigant, Sands is entitled to discovery, which the court differentiated from open records requests. In support of its conclusion that the discovery process allows Sands' request for information, the court relied on and quoted the language in *Burnett v. Alt,* 224 Wis. 2d 72, 85, 589 N.W.2d 21 (1999), that "[p]rivileges are the exception, not the rule," and that unless such a privilege applies, parties "are entitled to every person's evidence" (citation omitted). The circuit court in this case concluded:

> I guess if the Supreme Court wants to create a privilege in this case, then they can create one. I don't think there's a privilege in this case. I think that [Sands] has a right to this discovery process. And if the Supreme Court wants to find that I'm wrong, that's why we have appellate cases and maybe they'll view me differently. But the cases that I've read and my gut feeling with respect to this whole discovery process, and clearly — you know, parties in litigation are entitled to same person's evidence. And I don't see a privilege and I don't see that's inherent in the statute. I just don't view it that way. And someone else— In all due respect, someone else might view it a different way and I'll be reversed then. And that's my gut call after reading the cases. I think that the [District] has to produce this information in this lawsuit with respect to Miss Sands' employment, of not giving proper notice regarding termination. I don't know what was discussed during that closed session. I guess that's what [Sands'] counsel wants to know, what was discussed. And it doesn't mean it's admissible. It might not be relevant, but they have a right during discovery to search out information that may support their position.

¶ 10. In an order dated April 12, 2005, the court granted Sands' motion and directed the District to answer Interrogatories No. 5 and 6. The District appealed.

¶ 11. The court of appeals decision issued on December 27, 2006, reversed the circuit court decision and remanded the cause with directions to enter an order denying Sands' motion to compel. *Sands,* 298 Wis. 2d 534, ¶ 15. The court of appeals held that the plain text of Wis. Stat. § 19.85 "clearly indicates that discussions occurring in a properly noticed closed session are not subject to disclosure. The statute contains no exceptions to the non-disclosure principle, none for litigation or any other circumstances." *Id.,* ¶ 10. The court of appeals also cited Wis. Stat. § 905.01 to hold that "a privilege of non-disclosure is implicit within [§ 19.85]." *Id.* It rejected Sands' reference to § 19.85(1)(b), which specifies that notice of closed sessions is required so the employee can demand that an evidentiary hearing be held in open session, explaining that this is not a subsec. (1)(b) case involving an evidentiary hearing. *Id.,* ¶ 13. The court of appeals concluded that

> based on the statutory language of Wis. Stat. § 19.85, the legislature intended for the substance of closed sessions to remain protected from public disclosure. Accordingly, the discussions which occurred at the closed sessions in this matter are not discoverable.

*Id.,* ¶ 15.

¶ 12. Sands petitioned this court for review of the court of appeals' decision, and on June 12, 2007, we granted review.

## II

¶ 13. We review a circuit court's order compelling discovery under an erroneous exercise of discretion standard. *Lane v. Sharp Packaging Sys., Inc.,* 2002 WI

28, ¶ 19, 251 Wis. 2d 68, 640 N.W.2d 788. Under that standard, we will sustain discretionary acts if we find the circuit court examined the relevant facts, applied a proper standard of law, and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach. *Id.* However, whether the circuit court applied the proper legal standard is a question of law we review independently of the circuit court but benefiting from its analysis. *Id.* The burden of proof is on the appellant to show that the circuit court erroneously exercised its discretion in granting a litigant's right to discovery. *Shibilski v. St. Joseph's Hosp. of Marshfield, Inc.,* 83 Wis. 2d 459, 470–71, 266 N.W.2d 264 (1978).

¶ 14. Determining whether the circuit court applied the correct legal standards in this case requires us to interpret various statutes, including Wis. Stat. §§ 905.01 and 19.85. Statutory interpretation is a question of law, which we review de novo. *State v. Waushara County Bd. of Adjustment,* 2004 WI 56, ¶ 14, 271 Wis. 2d 547, 679 N.W.2d 514.

¶ 15. Statutory interpretation begins with the text of the statute; if the meaning of the statute is plain, this court ordinarily stops the inquiry. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46. If a statute is ambiguous, i.e., capable of being understood in more than one way by reasonably well-informed persons, the court may examine external sources such as legislative

13

history to determine the statute's meaning. *Id.*, ¶¶ 47–48. However, the court may also consult extrinsic sources "to confirm or verify a plain-meaning interpretation." *Id.*, ¶ 51.

## III

¶ 16. The procedural posture of this case governs the lens through which we view it. Although the District attempts to frame this case as an open meetings case, the order on appeal is a motion to compel in the context of a standard Wis. Stat. § 804.01 discovery request. Consequently, § 804.01 governs this case. Therefore, although we will address the District's claims of an implicit privilege and of a "deliberative process privilege" under the closed meetings statute, we will review those claims through the appropriate lens, bearing in mind that this is ultimately a § 804.01 discovery case.

## A

¶ 17. Wisconsin Stat. § 804.01(2)(a), which sets forth the general scope of allowable discovery, states:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The express language of this statute clearly provides that parties shall have access to relevant information, including information that may be inadmissible at trial, so long as that information is not "privileged." In this case, the mere fact that the information Sands sought was related to the contents of a closed session does not mean that such information is "privileged." To explain why, we begin by addressing the broad nature of a litigant's right to discovery.

¶ 18. The right to discovery is an essential element of our adversary system. In order for our adversary system to effectively ensure the ability of litigants to uncover the truth, and to seek and be accorded justice, it is our responsibility to render decisions that do no harm to the fundamental and important right of litigants to access our courts. In *Glenn v. Plante,* 2004 WI 24, 269 Wis. 2d 575, 676 N.W.2d 413, we elaborated upon these principles, explaining the fundamental importance of discovery rights:

> In general, the public has a right to every person's evidence at trial. At its core, the adversary system is based upon the proposition that an examination of all of the persons possessing relevant information, which will lead to the discovery of all of the relevant facts, will produce a just result. Nevertheless, this fundamental legal principle is tempered by constitutional, common law, or statutory privileges. Because the adversary system places a premium on the discovery of relevant information, courts are cautious not to overly interfere with this goal.

*Id.,* ¶ 20 (citations omitted).

¶ 19. The parameters of permissible discovery are broad by necessity. As we have explained, "[t]his

breadth is essential because the purpose of discovery is identical to the purpose of our trial system—the ascertainment of truth." *Crawford ex rel. Goodyear v. Care Concepts, Inc.,* 2001 WI 45, ¶ 13, 243 Wis. 2d 119, 625 N.W.2d 876. *See also United States v. Nixon,* 418 U.S. 683, 709–10 (1974); *Shibilski,* 83 Wis. 2d at 466; *Davison v. St. Paul Fire & Marine Ins. Co.,* 75 Wis. 2d 190, 199, 248 N.W.2d 433 (1977). We cannot render meaningful legal decisions without first determining the true facts of each case. "One of the fundamental policies of our law, and one which dominates in the absence of a special policy arising in particular types of situations, is that the judicial system and rules of procedure should provide litigants with full access to all reasonable means of determining the truth." *Jacobi v. Podevels,* 23 Wis. 2d 152, 156–157, 127 N.W.2d 73 (1964).

¶ 20. The quest for truth in each case, in turn, demands that we allow litigants to build complete records, investigating and preparing their cases thoroughly before presenting their cases to fact-finders. As such, we are even more loath to impose limitations upon discovery than we are to limit public access to government records.

¶ 21. We must, therefore, tread carefully in the face of potential threats to a litigant's pursuit of truth and justice. Such threats to a litigant's access to truth and justice may come in the form of overly broad claims of evidentiary privilege. In a case emphasizing the fundamental importance of protecting access to discovery, the court of appeals has explained that "[e]videntiary privileges . . . interfere with the trial's search for the truth, and must be strictly construed, consistent with the fundamental tenet that the law has the right

16

to every person's evidence." *State v. Echols*, 152 Wis. 2d 725, 736–37, 449 N.W.2d 320 (Ct. App. 1989).

¶ 22. In respect of these fundamental principles which lie at the core of discovery rights and are the foundation of our adversary system, we have held that "[p]rivileges are the exception, not the rule." *Alt*, 224 Wis. 2d at 85. The scope of that exception is the subject of this case.

B

¶ 23. Our inquiry into the scope of discovery privileges begins with a look at the relevant statutory language regarding privileges. First, Wis. Stat. § 804.01(2)(a) provides that parties may obtain relevant discovery regarding any matter, as long as it is "not privileged." Wisconsin Stat. § 905.01, in turn, describes the scope of evidentiary privileges, and states:

> Except as provided by *or inherent or implicit* in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin, no person has a privilege to:
>
> (1) Refuse to be a witness; or
>
> (2) Refuse to disclose any matter; or
>
> (3) Refuse to produce any object or writing; or
>
> (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

(Emphasis added.)

¶ 24. The remainder of Chapter 905 proceeds to set forth a number of explicit privileges, none of which apply in this case. The District does not claim that any

17

of the explicit statutory privileges contained within ch. 905 apply. Rather, the District's arguments are primarily focused on a different statute, Wis. Stat. § 19.85, which it argues contains an implicit privilege against disclosure of closed meeting contents. Section 19.85 provides in pertinent part:

> (1) Any meeting of a governmental body, upon motion duly made and carried, may be convened in closed session under one or more of the exemptions provided in this section. The motion shall be carried by a majority vote in such manner that the vote of each member is ascertained and recorded in the minutes. No motion to convene in closed session may be adopted unless the chief presiding officer announces to those present at the meeting at which such motion is made, the nature of the business to be considered at such closed session, and the specific exemption or exemptions under this subsection by which such closed session is claimed to be authorized. Such announcement shall become part of the record of the meeting. No business may be taken up at any closed session except that which relates to matters contained in the chief presiding officer's announcement of the closed session. . . .

The District's argument that the above statutory language creates an evidentiary privilege relies in part on a premise that reading such a privilege into § 19.85 is authorized by the above "inherent or implicit" language of Wis. Stat. § 905.01.

¶ 25. Sands, in turn, argues that the open meetings law does not create such an implicit or inherent privilege. Sands seeks to reinstate the judgment of the circuit court in this case, which rejected the District's claim to an implicit privilege under Wis. Stat. § 19.85, ruling instead that parties to litigation are generally

18

entitled to evidence and that no inherent privilege precludes such discovery in this case.

¶ 26. Before turning to Wis. Stat. § 19.85, we look at the statute authorizing privileges, Wis. Stat. § 905.01. Our task is first to determine the meaning of the "inherent or implicit" privilege language in § 905.01.

¶ 27. To the extent that there may be any ambiguity created by the language of Wis. Stat. § 905.01's "inherent or implicit" privilege provision, we find guidance in the Judicial Council Committee's note to the statute. The Judicial Council note provides in pertinent part:

> The phrase "or inherent or implicit in statute" is designed *to insure that the "work product" immunity rule and the interpretations of s. 19.21 [19.35] are unaffected.* The Wisconsin "work product" immunity rule like the federal rule originates in the discovery statutes. However, the federal rule has now been incorporated expressly in revised Rule 26(b)(3) of the Federal Rules of Civil Procedure. Wisconsin does not appear to be inconsistent with this manner of restricting privileges. Common law privileges, not originating in the constitution, could not be enlarged on a case by case basis. [Citations omitted.]
>
> This section recognizes that there are other statutory privileges that are not included in this chapter. However, *they are provided for in other statutory provisions. . . .*
>
> The right of a member of the public to inspect public documents as specified in s. 19.21 [19.35] (formerly s. 18.01) remains subject to the procedure outlined in *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 137 N.W.2d 470 (1965), modified and rehearing denied 28 Wis. 2d 672, 139 N.W.2d 241 (1965) and *Beckon v. Emery,* 36 Wis. 2d 510, 153 N.W.2d 501 (1967).

19

Judicial Council Committee's Note, 1974, Wis. Stat. § 905.01, 59 Wis. 2d R101–102 (emphasis added). This Judicial Council note reveals that the "inherent or implicit" language in the Rule is quite narrow in scope and was included by this court to preserve a particular work product privilege already recognized at the time this language was added to the statute, while leaving other privileges to be provided for more expressly in other statutory provisions (aside from privileges against Wis. Stat. § 19.35 open records requests that are still governed by a common law balancing test).

¶ 28. This Judicial Council note's discussion of the meaning of Wis. Stat. § 905.01's "inherent or implicit" language was explained by Justice Bradley's dissenting opinion in *Alt:*

> According to the Judicial Council's notes on Wis. Stat. § 905.01, the phrase "inherent or implicit" was inserted, not to give a court some device with which to "interpret" additional privileges. Rather, the notes strongly suggest that the phrase was inserted solely to protect the "work-product privilege"—a privilege the court created prior to 1973 in *State ex rel. Dudek v. Circuit Court,* 34 Wis. 2d 559, 150 N.W.2d 387 (1967). . . .
>
> This latter interpretation is consistent with the tenor of the rule: new privileges are not to be created except by legislation or Supreme Court rule. *Davison v. St. Paul Fire & Marine Ins. Co.,* 75 Wis. 2d 190, 205–06, 248 N.W.2d 433 (1977). Wisconsin Stat. § 905.01 is not a license for courts to create, modify, or expand privileges; that task must be accomplished by legislative or rule-making action.

*Alt,* 224 Wis. 2d at 101 n. 2 (Bradley, J., dissenting).[8]

---

[8] The majority opinion in *Burnett v. Alt,* 224 Wis. 2d 72, 589 N.W.2d 21 (1999), did not similarly address the meaning of the

¶ 29. *Davison* was a tort case against a hospital which reached our court on appeal after the circuit court refused to recognize a common law or statutory testimonial privilege protecting the proceedings and reports of certain hospital committees from disclosure through discovery. *Davison,* 75 Wis. 2d at 192–94. This court rejected the hospital's claims to a common law privilege as unsupported by any legal authority. *Id.* at 201–02. As to the claimed statutory privilege, the hospital in *Davison* argued that language in the administrative code[9] indicates a clear legislative intent to keep the committee's reports and proceedings confidential, thereby affording a privilege against discovery under Wis. Stat. § 905.02's language recognizing privileges "if provided by law." *Id.* at 196. This court rejected that claim, explaining that § 905.02 codifies only those privileges that are specifically and unequivocally granted, that this court has consistently interpreted such privileges strictly and narrowly, and that there is no statutory right of testimonial privilege protecting the documents in question from discovery. *Id.* at 195–201. Finally, this court rejected the hospital's suggestion that this court is authorized to create a privilege judicially on a case-by-case basis, explaining that if the sought-after privilege arises from common law, it must be adopted by supreme court rule or by statute. *Id.* at 205–06.

---

Judicial Council note, and no other Wisconsin case has addressed the meaning of the "inherent or implied" clause of the Rule as explained in the Judicial Council note.

[9] Section H24.04(1)(n) of the Wisconsin Administrative Code required the hospital tissue committee to issue its findings in a coded form which discusses cases in hypothetical terms. *See Davison v. St. Paul Fire & Marine Ins. Co.,* 75 Wis. 2d 190, 195–96, 248 N.W.2d 433 (1977).

¶ 30. Although in *Davison* the rule that statutory privileges must be specifically and unequivocally granted was discussed in terms of Wis. Stat. § 905.02, the Judicial Council note to Wis. Stat. § 905.01 clarifies that this principle is embraced as well in § 905.01, which added the phrase "inherent or implicit" only for the purpose of "insur[ing] that the 'work product' immunity rule and the interpretations of [Wis. Stat. § 19.35] are unaffected," while other statutory privileges may still be specifically provided for in other statutory provisions. Judicial Council Committee's Note, 1974, Wis. Stat. § 905.01, 59 Wis. 2d R101–102.

¶ 31. In addition, the underlying emphasis in *Davison* on the narrow and limited nature of privileges against discovery is consistent with the approach taken across the country. In *Davison,* this court quoted the following passage from the U.S. Supreme Court decision in *Nixon:* " '. . . these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' " *Davison,* 75 Wis. 2d at 199 (quoting *Nixon,* 418 U.S. at 709–10);[10] *see also Shibilski,* 83 Wis. 2d at 466.

¶ 32. Even where a statute contains confidentiality requirements, an evidentiary privilege is not necessarily created as a result, because " 'confidential' and 'legal privilege' are very different" concepts. *Custodian of Records for LTSB v. State,* 2004 WI 65, ¶¶ 14–15, 272

---

[10] The Supreme Court in *United States v. Nixon,* 418 U.S. 683 (1974), was emphatic in ruling that privileges must not be lightly created or expansively construed, being in derogation of the search for truth. The decision dramatically illustrated that even the confidential communications of the President of the United States are not automatically privileged and shielded from discovery requests.

Wis. 2d 208, 680 N.W.2d 792. Legal privilege is a broader concept than confidentiality. While confidential data is "meant to be kept secret," legal privilege includes "the legal right not to provide certain data when faced with a valid subpoena." *Id.*, ¶ 15. Similarly, even though the Uniform Trade Secrets Act, Wis. Stat. § 804.01(3)(a)7., creates confidentiality protections for trade secrets, it also provides that trade secrets, "or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way[,]" may nonetheless be subject to discovery in a lawsuit, with protective orders available to protect confidentiality.

¶ 33. As such, as a general rule, and even in the case of confidential information, the scope of allowable discovery is necessarily broad, being central to the core purpose and principles of our adversary system. Efforts to curtail a litigant's quest for truth should not be liberally rewarded, but must be scrutinized with caution and an eye toward preserving the principles of our adversary system.

C

¶ 34. Having explained the broad access to information accorded by our discovery statutes and the contrasting narrow nature of the privileges that may be claimed in the face of discovery requests, we now address the particular statutes that are more directly implicated by the District's privilege argument: the open meetings law and the closed session exemptions thereto.

¶ 35. Wisconsin's open meeting laws, like our discovery statutes, reflect our State's policy of a strong presumption in favor of openness and access. Wisconsin

Stat. § 19.81, the official "Declaration of policy" of the open meetings subchapter under which Wis. Stat. § 19.85 falls, explicitly describes the intent of the legislature and policy underlying the open meetings law as follows:

> (1) In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business.

The subchapter's declaration of policy proceeds to further explain that the policy of the open meetings subchapter is also "[t]o implement and ensure the public policy herein expressed, all meetings of all state and local governmental bodies shall be publicly held in places reasonably accessible to members of the public and shall be open to all citizens at all times unless otherwise expressly provided by law." Wis. Stat. § 19.81(2).

¶ 36. This declaration of policy underscores the general tenor of the open meetings statute: a recognition that meetings of governmental bodies must be more open to the public than meetings of nongovernmental bodies. Those nongovernmental bodies' meetings that are not open to the public are still generally subject to litigation discovery requests. It would be incongruous with the clear policy articulated in the open meetings statute for the legislature to include in the open meetings statute, which generally holds governmental bodies to a higher degree of scrutiny and openness than nongovernmental bodies, a privilege against litigation discovery to which only governmental bodies, not nongovernmental bodies, are entitled.

¶ 37. Furthermore, the closed session exemptions to the open meetings law are limited in scope, confined to those specific contexts listed in Wis. Stat. § 19.85(1)(a)-(j). Even in those contexts, the statute only permits, but does not require, meetings to convene in closed session, i.e., with members of the public not allowed to attend. *See* Wis. Stat. § 19.85(1)(certain governmental meetings "*may* be convened in closed session under one or more of the exemptions provided in this section" and a "closed session *may* be held for any of the following purposes. . .")(emphasis added).

¶ 38. The particular closed session provision at issue in this case is Wis. Stat. § 19.85(1)(c), which allows closed sessions for the purpose of "[c]onsidering employment, promotion, compensation or performance evaluation data of any public employee over which the governmental body has jurisdiction or exercises responsibility." We disagree with the court of appeals' conclusion that "a privilege of non-disclosure is implicit within this statute." *Sands,* 298 Wis. 2d 534, ¶ 10.

¶ 39. Courts in other states with similar statutes that have addressed this issue have rejected such an approach that equates the creation of closed session exemptions from open meetings laws with the creation of closed meeting discovery privileges. *See, e.g., County Comm'rs for St. Mary's County v. Lacer,* 903 A.2d 378, 387 (Md. 2006)(upholding circuit court order permitting discovery related to the statements and actions of a county board during a closed session meeting); *State ex rel. Upper Republican Natural Res. Dist. v. Dist. Judges of the Dist. Ct. for Chase County,* 728 N.W.2d 275, 279–81 (Neb. 2007)(concluding that there is no privilege for communications by virtue of the communications having been made during a closed session); *Springfield Local Sch. Dist. Bd. of Ed. v. Ohio Ass'n of*

*Pub. Sch. Employees,* 667 N.E.2d 458, 467 (Ohio Ct. App. 1995)("there is no absolute privilege to be accorded discussions held in executive session [although] a trial court, in its discretion, may limit discovery"). *See also Dillon v. City of Davenport,* 366 N.W.2d 918, 921 (Iowa 1985):

> While section 28A.5 provides specific direction concerning the preservation of the occurrences in a closed session and details the extent to which the minutes or a recording of the meeting may be disclosed, it does not specify that the discussions at the closed meeting acquire the status of confidential communications which are privileged from any use other than that specified. Subsection 28A.5(4) does provide that such matters "shall be sealed and shall not be public records open to public inspection," except in an enforcement action after examination by the court in camera; this is not an enforcement action. On the other hand, our discovery rule provides that the parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Iowa R. Civ. P. 122(a).

¶ 40. Even Illinois, a state that grants qualified immunity to some types of closed session communications, does so in a manner that preserves any discovery rights to which a litigant may be entitled. In a decision concluding that labor-negotiating strategy sessions were entitled to a type of privilege against discovery requests, the Illinois Supreme Court was careful to limit that privilege to a qualified privilege which still allows litigants access to the requested information through an in camera inspection, after the party seeking disclosure of the privileged information shows a " 'compelling necessity' for the specific information requested." *Illinois Educ. Labor Relations Bd. v. Homer Cmty. Consol. Dist.,* 547 N.E.2d 182, 187–88 (Ill. 1989).

In a later decision, the court similarly recognized that "it is unjust to afford the government the benefit of withholding relevant evidence while requiring its opponent to adhere to the established rules of open discovery." *People ex rel. Birkett v. City of Chicago*, 705 N.E.2d 48, 52 (Ill. 1998).

¶ 41. We find particularly compelling the examination of this issue by the Nebraska Supreme Court, which held that its open meetings act did not, by including a closed session exception, thereby create a closed session discovery privilege in *Upper Republican NRD*. In that case, a nonprofit organization called WaterClaim, along with several concerned residents of a natural resources district, sued the Upper Republican Natural Resources District (NRD) and its board of directors for a violation of Nebraska's Open Meetings Act. *Upper Republican NRD*, 728 N.W.2d at 277–78. When the plaintiffs attempted to depose some of the defendants, the defendants filed a motion in limine, arguing in part that discussions held in closed session are exempt from discovery because they are confidential. *Id.* at 278. In response, the plaintiffs filed a motion to compel, which the presiding judge granted, explaining that

> [i]f the Court were to rule in the [defendants'] favor on this matter, it would prevent any lawsuit, at any time, claiming a violation of the Open Meetings [Act] to move forward because all of the evidence involved in the violation of the Open Meetings [Act] was at the meeting held in private.

*Id.*

¶ 42. In a mandamus action, the Nebraska Supreme Court affirmed, applying a thorough analysis of the relationship between closed session exemptions to

27

open meetings laws and privileges against discovery, which the court explained are necessarily distinct concepts. *Id.* at 279–81. The court explained that its state's public meetings laws are liberally construed to fulfill the objective of openness in favor of the public, while closed session provisions are narrowly and strictly construed. *Id.* at 279. The court contrasted the express language creating discovery privileges in other contexts with the lack of any comparable language in its state's open meetings act indicating that the Nebraska legislature "intended to create an absolute privilege for all communications occurring while a public body is in a closed session." *Id.* at 279–80.

¶ 43. After concluding there was no explicit privilege in the text of the statute or evidence of legislative intent to create such a privilege, the court explored the strong policy reasons for not denying discovery access to closed session contents:

> Our conclusion is also based on the fact that if these communications were privileged solely because they occurred during a closed session, a private litigant would be left without the ability to challenge the validity of the public body's actions during a closed session. To determine whether a public body, in a closed session, has acted outside of its authority, a private litigant must have access to those communications by means of a legitimate discovery request. To conclude otherwise would, in essence, immunize a public body from any challenge relating to the propriety of its closed session.

*Id.* at 280.

¶ 44. Like the Nebraska Supreme Court, we find no language in our own open meetings laws indicating that our legislature intended to create a broad discovery privilege for communications occurring in closed ses-

sions of governmental bodies, in contrast with the numerous other privileges that explicitly *are* provided for in our discovery statutes.

¶ 45. To the contrary, the language of Wis. Stat. § 19.85 does not describe the contents of closed meetings as either secret[11] or exempt from discovery. In addition, the text of § 19.85 allowing closed meetings in some circumstances is permissive, not mandatory. We will not infer a mandatory discovery privilege for closed session contents when the closed session statute itself speaks in permissive terms, not requiring any meeting to be closed in the first place.

¶ 46. Most importantly, as we have explained, the rights of private litigants to engage in legitimate discovery requests are critical to the functioning of our truth and transparency-focused adversary system. While certain government bodies may be entitled to have some meetings closed to the general public, we do not view such permissive limitations upon the physical presence of the general public at meetings to justify automatically mandating the denial of discovery to litigants whose rights such meetings may directly affect.

¶ 47. Consistent with decisions in other states that have addressed this issue, we therefore conclude

---

[11] While we recognize that Wis. Stat. § 19.81(3), in conformance with Article IV, section 10 of the Wisconsin Constitution, allows for secrecy within each house of the legislature when the public welfare requires it, these provisions are not implicated in this case. Despite our recognition of the secrecy provisions of § 19.81(3) and our explanation that the subsection is not at issue in this case, the dissent suggests that our opinion somehow ignores or limits both the legislative secrecy provision of § 19.81(3) and other explicit exemptions of the open meetings statute. *See* dissent, ¶¶ 129–132. We again emphasize that we do not address that issue.

that in allowing governmental bodies to conduct closed sessions in limited circumstances, Wis. Stat. § 19.85 does not thereby create a blanket privilege shielding closed session contents from discovery.

¶ 48. While our holding here is consistent with the conclusions reached by other states, it is also consistent with our own past decisions such as *LTSB,* in which this court explained that "not all confidential data is that over which the custodian or owner may assert a privilege." *LTSB,* 272 Wis. 2d 208, ¶ 15 (citations omitted).[12] Thus, just because a meeting may be kept closed from the public, even if some of the meeting contents are thereby "confidential" in some sense of the

---

[12] We note that our holding is also consistent with the approach taken in open records cases in this state. In *Wisconsin State Journal v. University of Wisconsin-Platteville,* 160 Wis. 2d 31, 38, 465 N.W.2d 266 (Ct. App. 1990), the court of appeals held that "[i]t does not follow that, simply because meetings were properly closed under sec. 19.85(1)(f), Stats., documents compiled in conjunction with those meetings are exempt from disclosure under sec. 19.35(1)." In *Zellner v. Cedarburg School District,* 2007 WI 53, ¶ 48, 300 Wis. 2d 290, 731 N.W.2d 240, this court similarly held that although a settlement meeting between Zellner and the District in that case "was closed to the public, it does not follow that records which were compiled in conjunction with that meeting are automatically exempt from release under the Open Records Law." In the present case, Sands urges us similarly to "refuse to create a new privilege for what is said in closed session meetings, just as it has refused to privilege what is written for closed sessions." We agree that the same principle applies: it does not follow that simply because meetings are closed under Wis. Stat. § 19.85, the contents of such meetings are exempt from disclosure in response to discovery requests, just as they are not automatically exempt from open records requests. The clear policy of discovery statutes, open records laws, and open meetings laws alike is transparency and access.

word, it does not necessarily follow that the District has a legal privilege to refuse compliance with discovery requests.

¶ 49.　The District concedes that not all statutes allowing confidentiality necessarily create a privilege, but attempts to distinguish *LTSB* by asserting that the closed meeting provisions of Wis. Stat. § 19.85 "extend far beyond" the custodial requirement in *LTSB* that data maintained by the legislative technology services bureau be kept confidential.

¶ 50.　The District argues that the more applicable cases are *Alt,* 224 Wis. 2d at 85–86, in which this court found a privilege in Wis. Stat. § 907.06(1) precluding expert witnesses from being appointed against their will; cases identifying qualified privileges for journalists under Article I, Section 3 of the Wisconsin Constitution; and cases that address the importance of protecting candor in the decision-making process. The District concludes that in the present case, an implicit privilege is apparent due to the purpose of Wis. Stat. § 19.85, which the District describes, without any legislative history or other citations, in the following terms:

> The legislature weighed the competing interests in enacting the open meetings law, and balanced those interests when it created statutory exemptions. In that process, it determined that, in the circumstances defined in § 19.85(1)(a) through (j), society's interest in not having those discussions and deliberations publicly disclosed outweighs society's interest in "open government."

¶ 51.　The District's arguments fail for a number of reasons. First, the District has it backwards when it cites *DeHart v. Wisconsin Mutual Insurance Co.,* 2007 WI 91, ¶ 31, 302 Wis. 2d 564, 734 N.W.2d 394, for the rule against judicial creation of exceptions to clear and unambiguous statutory provisions. The District at-

tempts to apply *DeHart* to argue that the circuit court in this case improperly created a discovery exception to the closed meeting provisions of Wis. Stat. § 19.85. However, *Dehart* actually serves to defeat the District's arguments because it reaffirms the impropriety of judicially creating an exception to the clear and unambiguous statutory language of Wis. Stat. § 804.01, which is in essence what the District is asking us to do.

¶ 52. Second, the District's argument that Wis. Stat. § 19.85 "extends far beyond" the custodial requirement in *LTSB* in its protection of information is not persuasive. *LTSB,* a case involving a criminal investigation of certain legislators and legislative employees, involved a subpoena duces tecum ordering the production of electronically stored communications in the possession of the Legislative Technology Services Bureau (LTSB). *LTSB,* 272 Wis. 2d 208, ¶¶ 1–4. The confidentiality protections asserted in *LTSB* were expressly set forth in Wis. Stat. § 13.96, which provides that LTSB "shall at all times observe the confidential nature of the data and information originated, maintained or processed by electronic equipment supported by it." *Id.,* ¶ 13 (quoting Wis. Stat. § 13.96).

¶ 53. In contrast, there is no such explicit confidentiality mandate in the text of Wis. Stat. § 19.85. Indeed, unlike the statute at issue in *LTSB,* there is no pertinent mandatory language at all in § 19.85. Rather, § 19.85(1) uses permissive language, allowing that certain governmental meetings "*may* be convened" and "*may* be held" in limited circumstances (emphasis added). The District has failed to explain how material that is not explicitly designated "confidential" is more entitled to a privilege against disclosure than material that is so designated. Consequently, the argument that § 19.85 "extends far beyond" Wis. Stat. § 13.96 in its

protection of certain information is not a viable argument.

¶ 54. Third, the District's description of *Alt* is flawed. *Alt* actually illustrates why the closed sessions statute in this case does *not* create such a privilege. In *Alt,* this court found a privilege in the text of Wis. Stat. § 907.06(1),[13] the language of which this court held was "clear and unambiguous" in expressly providing that expert witnesses may not be appointed by the court against their will. *Alt,* 224 Wis. 2d at 86. This court held in *Alt* that "this *express* grant implies a privilege to refuse to testify if the expert is called by a litigant. If a court cannot compel an expert to testify, it logically follows that a litigant should not be able to so compel an expert." *Id.* (emphasis added).

¶ 55. Although this court described the privilege in *Alt* as "implicit" as it pertained to an expert's right to refuse a judge's request for testimony, this court emphasized that its conclusion that such implicit privilege existed was based on the explicit, unambiguous, and express statement in Wis. Stat. § 907.06 establishing the right of experts to refuse litigants' requests for them to testify. *Id.* at 85–86. As such, *Alt*'s significance for the present case is that, unlike in *Alt,* the statute in the present case does not contain any similar language which explicitly, unambiguously, and expressly allows the District to refuse to turn over meeting contents to

---

[13] Wisconsin Stat. § 907.06(1) provides in pertinent part:

(1) Appointment. The judge may on the judge's own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The judge may appoint any expert witnesses agreed upon by the parties, and may appoint witnesses of the judge's own selection. *An expert witness shall not be appointed by the judge unless the expert witness consents to act. . . .* (Emphasis added.)

any person, let alone a litigant or judge. Quite the contrary; the policy underlying the interplay of Wis. Stat. §§ 19.81, 19.85, 804.01(2)(a) and 905.01 is one of openness. Consequently, the District does not provide grounds for our deviating from the general rule articulated in the opening of our analysis in *Alt* that "[p]rivileges are the exception, not the rule." *Id.* at 85.

¶ 56. Fourth, the District's argument that an implied privilege for contents of closed meetings is like the constitutional qualified privilege for journalists is a flawed analogy. The case upon which the District relies to make this argument, *State v. Knops,* 49 Wis. 2d 647, 183 N.W.2d 93 (1971), was a case about constitutional privilege, and was decided before Wis. Stat. § 905.01 was enacted, restricting the creation of new evidentiary privileges.

¶ 57. Finally, the District's description of the policy underlying Wis. Stat. § 19.85 is unpersuasive. The District highlights the court of appeals' citation of *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 150–51 (1975), for the proposition that one purpose of § 19.85 is to allow candid discussion by closed meeting participants, free from worries that the discussion will be disclosed, and that a privilege is necessary to accomplish that purpose. However, *NLRB* is inapposite. The case does not address either § 19.85 or discovery statutes at all, but rather addresses an explicit exemption from disclosure for certain intra-agency memorandums under section 5 U.S.C. § 552(b)(5)(1970) of the federal Freedom of Information Act (FOIA), an exemption which the Supreme Court held did not even apply in that case. *NLRB,* 421 U.S. at 155. Consequently, there may be an executive privilege from FOIA disclosure for certain intra-agency memorandums under the express language of 5 U.S.C. § 552(b)(5) of the federal Freedom of Infor-

mation Act, but the present case involves a discovery request for information pertaining to a lawsuit, not a FOIA request made to a federal agency.

¶ 58.　The District's related argument, that the legislature's intent to create a discovery privilege in enacting Wis. Stat. § 19.85 can be inferred from the fact that, according to the District, the legislature balanced competing public interests and found that society's interest in making closed session discussions private outweighs society's interest in access to the content of such discussions, also fails. This argument is unsupported by any citation to legislative history, statutory or case law evincing such a decision by the legislature.

¶ 59.　For all of these reasons, we conclude that allowing limited exceptions to the open meetings statute does not equate to creating an implicit evidentiary privilege against discovery requests. Wisconsin Stat. § 19.85 provides only that some meetings may be closed, not that their contents are privileged against discovery requests under Wis. Stat. § 804.01. In other words, "closed meeting" is not synonymous with "a meeting that, by definition, entails a privilege exempting its contents from discovery." Considering the general presumptions of openness and access underlying both our discovery and open meetings statutes, there is no compelling justification for denying a litigant's rights to discovery regarding the substance of closed session discussions pertaining to that litigant. Therefore, we conclude that § 19.85 does not create a privilege shielding contents of closed meetings from discovery requests.[14]

---

[14] Even if Wis. Stat. § 19.85 did create a privilege shielding contents of closed meetings from discovery, Sands points out

## IV

¶ 60. The District alternatively refers to the privilege it seeks as a "deliberative process privilege [which] prohibits the compelled disclosure of the Board's discussions." However, no such "deliberative process privilege" has ever been recognized by the Wisconsin courts, and we decline the District's invitation to create a new privilege judicially.

¶ 61. The only justification the District gives for adopting a new "deliberative process privilege" is a string citation of federal cases that have no bearing on the present case, and that do not support the argument that a "deliberative process privilege" is implicit in Wis. Stat. §§ 19.85 and 19.31.

¶ 62. The first case cited by the District, *Tennessean Newspapers, Inc. v. Federal Housing Administration*, 464 F.2d 657 (6th Cir. 1972), merely discussed in passing an explicit privilege against FOIA requests

---

that those statutory privileges explicitly enumerated in ch. 905 of the Wisconsin Statutes are subject to limitations. Wisconsin Stat. § 905.11, for example, provides that an individual "upon whom this chapter confers a privilege against disclosure of the confidential matter or communication waives the privilege if the person or his or her predecessor, while holder of the privilege, voluntarily discloses or consents to disclosure of any significant part of the matter or communication." Consequently, even if § 19.85 created a privilege similar to those statutorily created in ch. 905, Sands argues that any such privilege may be considered waived by virtue of the fact that the District admitted in its interrogatory answers that an individual who was not a member of the Board, Dr. Petric, was present at the closed meeting. *See, e.g., Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, ¶¶ 124, 143–45, 283 Wis. 2d 384, 700 N.W.2d 27 (Prosser, J., concurring). While this argument by Sands may appear to have merit, we need not reach it, having established that there is no privilege in the first place established by § 19.85.

established by the plain text of the federal Freedom of Information Act, which exempts from FOIA requirements "inter-agency or intra-agency memorandums or letters which would not be available by law to a party *other than an agency in litigation* with the agency." 5 U.S.C. § 552(b)(5)(1970)(emphasis added). *See Tennessean Newspapers, Inc.,* 464 F.2d at 659. Not only does this case address an explicit exemption from FOIA, as opposed to an implicit exemption from discovery requests, but this FOIA exemption recognizes the importance of broad access to information in litigation, enabling access to such information even in the face of a FOIA exemption.

¶ 63. All the other cases the District cites in this section save one pertain to interpretations of the FOIA exemption as well, and their discussions of FOIA are not authoritative in our deliberations of a different breed of claimed implicit privileges under our state law.

¶ 64. *NLRB,* 421 U.S. at 150, for example, explains that "Congress had the Government's executive privilege specifically in mind in adopting Exemption 5." *Department of the Interior v. Klamath Water Users Protective Association,* 532 U.S. 1, 9 (2001), also describes limitations on the FOIA exemption. In that case, the Court explained that the point of the FOIA exemption:

> is not to protect Government secrecy pure and simple . . . and the first condition of Exemption 5 is no less important than the second; the communication must be "inter-agency or intra-agency," 5 U.S.C. § 552(b)(5). . . . "[A]gency" means "each authority of the Government of the United States," § 551(1), and "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive

branch of the Government... or any independent regulatory agency, § 552(f)."

*Id.*

¶ 65. The final FOIA case cited by the District as supporting an implicit privilege under our state laws is *Enviro Tech International, Inc. v. United States Environmental Protection Agency,* 371 F.3d 370 (7th Cir. 2004). The District argues that this case stands for the proposition that "[t]o qualify for protection under the deliberative process privilege, the documents or other evidence in issue must be both 'predecisional and deliberative' in nature." To the extent that this description implies that the issues in *Enviro Tech* overlap with those implicated in the present case, it is an inaccurate description of *Enviro Tech. Enviro Tech* is a FOIA case and clearly describes the deliberative process privilege at issue in that case as a privilege contained specifically in the FOIA exemption, explaining that "materials are routinely shielded from disclosure by the deliberative process privilege *under FOIA Exemption 5." Id.* at 373 (emphasis added)(citation omitted).[15]

¶ 66. In the only deliberative process privilege case cited by the District that was not a FOIA case, *Lang v. Kohl's Food Stores, Inc.,* 185 F.R.D. 542, 550–51

[15] We note that "deliberative process privilege" is a phrase used by cases interpreting the FOIA exemption and is not in the text of the federal statute itself. *See Enviro Tech Int'l, Inc. v. EPA,* 371 F.3d 370, 371 (7th Cir. 2004)("The EPA asserted, and the district court agreed, that the withheld documents were exempt from disclosure under section 552(b)(5) pursuant to the so-called deliberative process privilege."). *See also* 5 U.S.C.A. § 552("(b) This section does not apply to matters that are— (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency").

(W.D. Wis. 1998), a single magistrate judge did recognize a broader "deliberative process privilege" beyond the context of FOIA requests. In that case, however, the magistrate explained that the privilege can be overcome by a showing of individual need for information:

> I also find that the [Equal Employment Opportunity Commission's] claim of deliberative process privilege is well-taken. The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency. Because frank discussion of legal and policy matters is essential to the decisionmaking process of government agencies, communications made prior to and as part of an agency determination are protected from disclosure. The privilege does not apply to communications made subsequent to the agency's decision. *The privilege may be overcome by a sufficient showing of particularized need outweighing the reasons for confidentiality.* The privilege should be applied as narrowly as consistent with efficient government operation.

*Id.* (citations omitted)(emphasis added).

¶ 67. Most importantly, none of the cases the District cites address either Wis. Stat. § 19.85 or § 804.01, or hold that such a closed meeting privilege against discovery requests exists under Wisconsin law.[16] In fact, Wisconsin does not recognize a deliberative process privilege. Wisconsin Stat. § 905.01 pre-

---

[16] The same is true of those cases cited by the dissent, several of which we have just explained are inapplicable; the dissent ignores our discussion of these cases. *See* dissent, ¶ 164. As to the remainder of the cases cited by the dissent as recognizing a deliberative process privilege, two (*International Paper Co. v. Federal Power Commission,* 438 F.2d 1349 (2d Cir. 1971), and *Daily Gazette Co. v. West Virginia Development Office,* 482 S.E.2d 180 (W.Va. 1996)) are FOIA cases and therefore inapposite for the reasons we have just discussed;

cludes the extension of common law privileges by the court on a case-by-case basis, but rather requires common law privileges not originating in the constitution to be adopted by statute or court rule. *See Davison,* 75 Wis. 2d at 205–06.

¶ 68. Even if it were within our general authority to create new privileges, the deliberative process privilege recognized by federal courts as explicitly contained in the Freedom of Information Act's fifth exemption does not lend itself to recognition as an implicit privilege applicable to discovery requests under Wisconsin law. This is because our state laws reflect a strong policy of transparency and access, particularly in the context of discovery requests where such a broad privilege would be detrimental to the search for truth central to our adversary process.

¶ 69. In addition to generally flying in the face of longstanding principles of open access, there are potential dangers inherent in the District's requested approach to privileging closed meeting contents against discovery requests. This approach would dramatically affect civil litigation and discovery in many areas where government bodies are litigants. One specific context where such a privilege could most detrimentally impair the judicial process is that of employment discrimination litigation, in which cases government employees who are denied access to their employers' closed discussions about their negative treatment would no longer have access to the discussions about their termination. In such contexts, employees who are discriminated

---

none are Wisconsin cases; and none apply a deliberative process privilege to shield information from discovery requests, whether in a closed meeting or otherwise.

against would not be able to avail themselves of standard discovery to disprove as pretext the employers' proffered reasons for their treatment, which is necessary to prove many federal and state discrimination claims. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804 (1973); *State v. Lamon,* 2003 WI 78, ¶ 32, 262 Wis. 2d 747, 664 N.W.2d 607; *State v. Walker,* 154 Wis. 2d 158, 176 n. 11, 453 N.W.2d 127 (1990).

¶ 70. The District has failed to explain the parameters of the new privilege it seeks, leaving unclear, for example, who could invoke it in which circumstances. Nothing would prevent legislative and administrative bodies from going into closed session to escape judicial review any time they fear litigation, in effect granting themselves immunity at whim on a regular basis.

## V

¶ 71. Although we conclude that the closed session exemption to the open meetings laws does not create an evidentiary privilege which exempts the District from discovery compliance in this case, our decision should not be viewed as *undermining the ability of* government bodies to conduct certain meetings in closed session where authorized statutorily. While discovery rights are broad and paramount to our justice system, they are not without limit. Wisconsin Stat. § 804.01(2)(a), setting forth the scope of allowable discovery, provides that subjects of discovery requests may object to requests that are not relevant to the subject matter involved in the pending action. Section 804.01(3) provides additional protections in the form of protective orders in response to annoying, embarrassing, oppressive, unduly burdensome or unduly expensive discovery requests, as follows:

41

(3) Protective orders. (a) Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including but not limited to one or more of the following:

1. That the discovery not be had;

2. That the discovery may be had only on specified terms and conditions, including a designation of the time or place;

3. That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

4. That certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;

5. That discovery be conducted with no one present except persons designated by the court;

6. That a deposition after being sealed be opened only by order of the court;

7. That a trade secret, as defined in s. 134.90(1)(c), or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

8. That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

(b) If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. Section 804.12(1)(c) applies to the award of expenses incurred in relation to the motion.

(c) Motions under this subsection may be heard as prescribed in s. 807.13.

As such, just because closed meeting contents are not categorically exempt from discovery compliance, it is not the case that every such discovery request should or will be granted.

¶ 72. In addition, there may be situations in which a discovery request implicates sensitive information to which the general public should not be given access. Although we do not know whether this is such a case, we recognize the potential for such cases involving sensitive government information that would be harmful to release to the general public. In such cases, the public is not necessarily entitled to as much information about government matters as a private individual seeking discovery about an issue directly affecting him or her. However, we also note that protections against such dangers are built into our discovery laws.

¶ 73. The U.S. Supreme Court has described cases in which litigants obtain information potentially damaging to reputation and privacy if publicly released, for example, in the following terms:

> [t]he government clearly has a substantial interest in preventing this sort of abuse of its processes. Cf. *Herbert v. Lando,* 441 U.S. 153, 176–177 (1979); *Gumbel v. Pitkin,* 124 U.S. 131, 145–146 (1888). As stated by Judge Friendly in *International Products Corp. v. Koons,* 325 F.2d 403, 407–408 (2d Cir. 1963), "[w]hether or not the Rule itself authorizes [a particular protective order] . . . we have no question as to the court's jurisdiction to do this under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices' " (citing *Gumbel v. Pitkin, supra*). The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders.

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35–36 (1984). Such protective orders are explicitly authorized by Wis. Stat. § 804.01(3)(a)7., which allows the issuance of protective orders establishing that "confidential research, development or commercial information not be disclosed or be disclosed only in a designated way."

¶ 74. In addition to issuing protective orders, courts may consider motions to seal the record, or may conduct in camera proceedings to ensure that the information requested is necessary to the litigant and does not exceed the scope of allowable discovery. *See State ex rel. Ampco Metal, Inc. v. O'Neill,* 273 Wis. 530, 78 N.W.2d 921 (1956).

¶ 75. Finally, we again find guidance in *Upper Republican NRD.* After concluding that Nebraska's closed meeting statute, which is similar to Wisconsin's, does not create a discovery privilege, the court in *Upper Republican NRD* added:

> We recognize that under certain circumstances, allowing a public body to enter into a closed session, away from the public view, serves to protect the public's interest. However, we do not conclude that granting a litigant access to communications of a closed session, by way of a limited, legitimate discovery request, will harm the public interest. In dealing with a discovery request relating to information from a closed session, a trial court may increase its supervision of the discovery process to ensure that sensitive or confidential information is protected through the creation of an appropriately tailored protective order.

> Furthermore, our determination that there is no absolute discovery privilege for communications that occur during closed sessions does not necessarily mean that all communications during closed sessions are

44

discoverable. All other recognized evidentiary privileges are still applicable. Thus, although there is no absolute privilege for closed session communications, to the extent the communications implicate other evidentiary privileges, such as the attorney-client privilege, the communications are protected.

*Upper Republican NRD,* 728 N.W.2d at 280. As in Nebraska, government bodies in Wisconsin that are subject to discovery requests related to closed meeting contents may similarly request courts to increase their supervision of the discovery process to ensure the protection of sensitive information.

¶ 76. The dissent decries our decision today, conceding that "governmental bodies may continue to meet lawfully behind closed doors," but describing the effect of our decision as being that "what is said there no longer will be privileged to stay there." Dissent, ¶ 80. What the dissent fails to recognize is that there is no closed meeting privilege against discovery compliance.

¶ 77. Neither the parties nor the dissent in this case can point to any statutes or case law establishing a closed meeting privilege against statutory discovery requests. It is therefore quite disingenuous for the dissent to accuse the majority of sweeping too broadly and violating the separation of powers doctrine.[17] Rather, it is the dissent that would have this court

---

[17] The closest the dissent comes to explaining its claim that we are somehow violating separation of powers in our opinion today is its internally inconsistent statement that "[i]n the absence of express *legislative* directive, it is unwise for this court, as a policy matter, to conclude that there are *no* 'privilege[s] implicit in Wis. Stat. § 19.85 shielding the contents of closed sessions from discovery.' " Dissent, ¶ 112 (emphasis in original). The fallacy of this statement that a legislature must *expressly* set forth the lack of an *implicit* privilege is even more

engage in judicial activism by creating a new privilege never before recognized by courts in this state and unauthorized by the legislature. Our decision today merely preserves the status quo, in contrast with the dissent's proposal that we establish a new privilege not requested by the parties[18] that would create unprecedented government exemptions from valid litigation discovery requests. The dissent admonishes this court with the reminder that this court must "remember the limitations on its rule-making powers," dissent, ¶ 133, but such limitations are precisely the basis of our decision today. This reminder is one that the dissent itself should heed, rather than engaging in Orwellian "doublethink."[19]

---

evident in light of the dissent's later passage explaining that the dictionary definition of "implied" is "[n]ot directly expressed." *Id.*, ¶ 153.

We further note that the law review article cited in paragraph 38 of the dissent, Russell L. Weaver & James T. R. Jones, *The Deliberative Process Privilege,* 54 Mo. L. Rev. 279, (1989), illustrates the United States Supreme Court's rejection of a separation of powers argument as a basis for a privilege:

> In *United States v. Nixon,* which involved the executive rather than the deliberative process privilege, President Nixon argued that the separation of powers doctrine precluded judicial review of his privilege claims. The United Sates Supreme Court disagreed. Relying on *Marbury v. Madison,* the Court emphasized that the courts are charged with the obligation "to say what the law is." The Court held that its duty extended to claims of privilege including the executive privilege. Lower federal courts have extended *Nixon's* holding to the deliberative process privilege.

*Id.* at 312 (citations omitted).

[18] One privilege the dissent seeks to establish that the parties never sought is the so-called "state secrets" privilege it claims exists under common law. Dissent, ¶¶ 118–132.

[19] *See* George Orwell, *1984,* 176–77 (The Penguin Group 1983)(1949).

## VI

¶ 78. We conclude that the court of appeals decision reversing the circuit court's order granting Sands' motion to compel was based on an erroneous interpretation of Wis. Stat. § 19.85 as containing a privilege shielding the content of closed sessions from discovery requests. Consequently, we reverse the decision of the court of appeals, and remand for further proceedings consistent with this opinion.

¶ 79. *By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 80. DAVID T. PROSSER, J. (*dissenting*). This seemingly small case, involving two discovery requests by a teacher whose contract was non-renewed by a local school board, seriously threatens the right of governmental bodies to deliberate in closed session before making a public decision, even though the Wisconsin Statutes explicitly authorize governmental bodies to meet in closed session for deliberation in specific, enumerated situations. *See* Wis. Stat. § 19.85(1)(a)—(j). Of course, governmental bodies may continue to meet lawfully behind closed doors. But what is said there no longer will be privileged to stay there. Painting with very broad strokes, the majority fashions a discovery rule that virtually destroys any privilege to keep deliberations by governmental bodies confidential when a lawsuit is filed.

¶ 81. This case requires the court to interpret two statutes, Wis. Stat. §§ 19.85 and 905.01, but it also implicates the Wisconsin Constitution and the power of this court. In my view, the court's decision sweeps too

broadly, frustrates the purpose of permitting governmental bodies to meet in statutorily authorized closed session, violates the separation of powers, and is incompatible with the conduct of governmental business. Accordingly, I must dissent.

¶ 82. This dissent will discuss the facts giving rise to this litigation, explore the implications of the court's decision, examine constitutional and common law history, interpret Wis. Stat. §§ 19.85 and 905.01, and then set out a deliberative process privilege, based on Wisconsin statutes, that would enable governmental bodies to keep their closed deliberations confidential.

## I. FACTS AND PROCEDURAL HISTORY

¶ 83. This case pits Dr. Barbara Sands (Dr. Sands), a Ph.D., against the Whitnall School District (the District) and members of the Whitnall School Board (the Board). On April 29 and May 13, 2002, the Board met in closed session to discuss the employment status of Dr. Sands, who had been hired by the District in 1998 to head its Gifted and Talented Education Program. The Board proceeded properly into closed session under a specific statutory exception to Wisconsin's open meetings law, namely, Wis. Stat. § 19.85(1)(c).[1] This exception authorizes a closed session to "[c]onsider[] employment, promotion, compensation or performance evaluation data of any public employee over which the governmental body has jurisdiction or exercises responsibility." *Id.*

¶ 84. Following the closed session on May 13, the Board moved into open session and voted against renewing Dr. Sands' most recent employment contract on grounds of poor job performance.

---

[1] The Board members were joined in their closed sessions by the District's superintendent, Dr. Karen Petric.

¶ 85. After the Board's decision, Dr. Sands filed a lawsuit against the District, alleging that the non-renewal of her employment contract violated Wis. Stat. § 118.24(6) because the District failed to provide her written notice of non-renewal at least four months before her contract expired. In its answer, the District denied that Dr. Sands was entitled to four months' advance notice of non-renewal because she did not qualify as an "administrator" within Wis. Stat. § 118.24(1).

¶ 86. During discovery, Dr. Sands requested documents, records, and testimonial evidence relating to whether she was, in fact, an "administrator" with a statutory right to advance notice of her non-renewal. Responding to the discovery request, the District produced all documents relating to its decision to non-renew Dr. Sands, all documents relating to Dr. Sands' job performance, and all documents relating to whether Dr. Sands was an administrator. However, the District refused to answer three questions among the interrogatories served upon it. The District refused to answer questions as to the deliberations that had taken place in the Board's closed sessions about Dr. Sands and the decision not to renew her contract. The interrogatories, and the District's responses, read as follows:

> *INTERROGATORY NO. 2:* Separately, for each person identified in response to interrogatory 1 [those present at the closed sessions], state the substance of the person's knowledge about the decision not to renew Dr. Sands' contract.

> *ANSWER:* Each of the individuals identified in answer to interrogatory 1, except Dr. Petric, were members of the Whitnall School Board and all were present during the Whitnall School Board's deliberations concerning the employment of Dr. Sands. Those deliberations occurred in closed session, are privileged

and not subject to discovery pursuant to § 19.85(1)(c), Stats., and the deliberative process privilege. The motion and vote, which was the decision of the board, is reflected on Exhibit H hereto.

*INTERROGATORY NO. 5:* Identify each person who spoke during the deliberations that resulted in the school board's decision not to renew Dr. Sands' contract.

*ANSWER:* During the public meeting on May 13, 2002[,] then counsel for Dr. Sands addressed the Whitnall School Board on the issue of Dr. Sands' employment. All other discussions occurred during the Board's closed session deliberations and are therefore not subject to discovery pursuant to § 19.85(1)(c), Stats., and the deliberative process privilege.

*INTERROGATORY NO. 6:* Separately[,] for each person identified in response to question 5, above, state the substance of what he or she said about renewing Dr. Sands' contract.

*ANSWER:* See response to number 5.

¶ 87. As I understand it, Interrogatory No. 2 is not at issue in this review and is not addressed here. *See* majority op., ¶ 8 n.7.

¶ 88. Upon the District's refusal to answer all the interrogatories completely, Dr. Sands moved to compel the District's answers. The District objected to the motion on grounds that the information sought about discussions during the Board's closed sessions was privileged, pursuant to Wis. Stat. § 19.85(1)(c).

¶ 89. The circuit court ruled that the District was required to answer the interrogatories and that no privilege protected the information:

> I don't think there's a privilege in this case. I think that Plaintiff has a right to this discovery process. . . . I don't see a privilege and I don't see that's inherent in

the statute. I just don't view it that way. . . . In all due respect, someone else might view it in a different way. . . .

¶ 90. However, the court of appeals reversed the circuit court's decision, concluding that a testimonial privilege is implicit in Wis. Stat. § 19.85(1)(c). *Sands v. Whitnall Sch. Dist.*, 2007 WI App 3, ¶ 15, 298 Wis. 2d 534, 728 N.W.2d 15 ("We hold that based on the statutory language of Wis. Stat. § 19.85, the legislature intended for the substance of closed sessions to remain protected from public disclosure.").

¶ 91. The court of appeals explained its decision as follows:

> Our conclusion is supported by the language of the statute and the public policy upon which the closed session statute was created. The legislature recognized that a governmental body's right to meet in closed session and maintain the confidentiality of its discussions on certain matters was paramount. Society's interest in having certain matters discussed in closed session outweighs society's interest in "open government." *See Oshkosh N.W. Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 482–83, 373 N.W.2d 459 (Ct. App. 1985). The closed sessions at issue here addressed Sands's employment and performance, which fall squarely into Wis. Stat. § 19.85(1)(c). Undoubtedly, one policy reason supporting a closed session to discuss such matters is to allow a candid discussion without concern that what is discussed will be disclosed. *See N.L.R.B. v. Sears Roebuck & Co.*, 421 U.S. 132, 150–52 (1975). Such candid discussion is a necessary part of the decision-making process of governmental agencies. . . . [I]f we were to conclude that disclosure of the substance of the closed discussion is permitted we, in essence, vitiate the need for the closed session at all. Such an interpretation would render the statute meaningless, which we cannot do. . . . The closed session

loses its meaning if filing a lawsuit opens the door to what was once closed. We must presume that the legislature intended the statute to be interpreted in a manner that advances the purposes of the statute[—]not defeats those purposes. . . . If the closed session is rendered meaningless by the filing of a lawsuit, then the purpose of the law enacted by the legislature is defeated. The careful crafting by our lawmakers in balancing what should be open to the public and what should take place in a closed session is effectively destroyed.

*Id.*, ¶ 11 (citations omitted).

¶ 92. This court granted Dr. Sands' petition for review and now reverses the court of appeals. Majority op., ¶¶ 4, 78.

## II. THE COURT'S DECISION
## AND ITS IMPLICATIONS

¶ 93. Dr. Sands states the issue in this case as follows: "In Wisconsin's Open Meetings law, do the closed session provisions of § 19.85(1)(c), Stats. implicitly create a privilege preventing discovery during civil litigation?" The District states the issue differently: "Where a public body properly meets in closed session pursuant to Wis. Stat. § 19.85(1), can a civil litigant compel disclosure of the discussions that took place during that closed session?"

¶ 94. In my view, the District's statement of the issue accurately pinpoints the dispute. The District did not obstruct discovery in any material sense, as it supplied all requested documents and divulged the names of all persons present at the closed sessions. It objected to disclosing the name of each person who spoke during confidential deliberations and to providing the substance of what each person had to say.

52

¶ 95. The majority responds to these issues by hammering on its thesis that closed session discussions, although "confidential," are not privileged from discovery:

¶ 1. "[T]here is neither a 'deliberative process privilege' in Wisconsin nor any other privilege implicit in Wis. Stat. § 19.85 shielding the contents of closed sessions from discovery." Majority op., ¶ 3.

¶ 2. "[T]he mere fact that the information Sands sought was related to the contents of a closed session does not mean that such information is 'privileged.'" Majority op., ¶ 17.

¶ 3. "[W]e find no language in our own open meetings laws indicating that our legislature intended to create a broad discovery privilege for communications occurring in closed sessions of governmental bodies." Majority op., ¶ 44.

¶ 4. "Wis[consin] Stat. § 19.85 does not . . . create a blanket privilege shielding closed session contents from discovery." Majority op., ¶ 47. *See also* majority op., ¶ 59 ("[W]e conclude that [Wis. Stat.] § 19.85 does not create a privilege shielding contents of closed meetings from discovery requests.").

¶ 5. "[J]ust because a meeting may be kept closed from the public, even if some of the meeting contents are thereby 'confidential' in some sense of the word, it does not necessarily follow that the District has a legal privilege to refuse compliance with discovery requests." Majority op, ¶ 48.

¶ 6. "Wisconsin does not recognize a deliberative process privilege." Majority op. ¶ 67.

¶ 96. The majority attempts to soften its far-reaching holding by suggesting potential limitations on the right to crack open closed sessions. The majority points to a Wis. Stat. § 804.01(3) protective order as a

mechanism to protect against annoying, embarrassing, oppressive, unduly burdensome, or unduly expensive discovery requests. *See* majority op., ¶¶ 71–73. The majority also suggests that circuit courts might "increase their supervision of the discovery process" to protect sensitive information. *Id.*, ¶ 75. It does not explain what this means.

¶ 97. Before proceeding to analyze the question presented, it is important to reflect upon the implications of the majority's decision in the real world. The non-party brief of the Wisconsin Department of Justice (Department) inadvertently exposes the practical impact of the decision:

> In the open meetings law alone, there are 13 statutory exemptions in Wis. Stat. § 19.85(1). Each of those exemptions permits, but does not require, a governmental body to have a closed session discussion of the identified subject matter. None of those exemptions contains a litigation exemption. From the analytic perspective of the court of appeals' decision, *nothing distinguishes the closed session exemption in Wis. Stat. § 19.85(1)(c) from the other 12 exemptions.*[2] (Emphasis added.)

---

[2] Closed sessions are permitted under the current version of Wis. Stat. § 19.85(1) for the following purposes:

(a) Deliberating concerning a case which was the subject of any judicial or quasijudicial trial or hearing before that governmental body.

(b) Considering dismissal, demotion, licensing or discipline of any public employee or person licensed by a board or commission or the investigation of charges against such person, or considering the grant or denial of tenure for a university faculty member, and the taking of formal action on any such matter; provided that the faculty member or other public employee or person licensed is given actual notice of any evidentiary hearing which may be held prior to final action being taken and of any meeting at which final action may be taken. The notice shall contain a statement that the

¶ 98. From the analytic perspective of the Department, all 13 categories of statutorily authorized closed sessions are subject to litigation to reveal the content of

person has the right to demand that the evidentiary hearing or meeting be held in open session. This paragraph and par. (f) do not apply to any such evidentiary hearing or meeting where the employee or person licensed requests that an open session be held.

(c) Considering employment, promotion, compensation or performance evaluation data of any public employee over which the governmental body has jurisdiction or exercises responsibility.

(d) Except as provided in s. 304.06 (1) (eg) and by rule promulgated under s. 304.06 (1) (em), considering specific applications of probation, extended supervision or parole, or considering strategy for crime detection or prevention.

(e) Deliberating or negotiating the purchasing of public properties, the investing of public funds, or conducting other specified public business, whenever competitive or bargaining reasons require a closed session.

(ee) Deliberating by the council on unemployment insurance in a meeting at which all employer members of the council or all employee members of the council are excluded.

(eg) Deliberating by the council on worker's compensation in a meeting at which all employer members of the council or all employee members of the council are excluded.

(em) Deliberating under s. 157.70 if the location of a burial site, as defined in s. 157.70 (1) (b), is a subject of the deliberation and if discussing the location in public would be likely to result in disturbance of the burial site.

(f) Considering financial, medical, social or personal histories or disciplinary data of specific persons, preliminary consideration of specific personnel problems or the investigation of charges against specific persons except where par. (b) applies which, if discussed in public, would be likely to have a substantial adverse effect upon the reputation of any person referred to in such histories or data, or involved in such problems or investigations.

(g) Conferring with legal counsel for the governmental body who is rendering oral or written advice concerning strategy to be adopted by the body with respect to litigation in which it is or is likely to become involved.

55

discussions on the identified subject matter of the sessions. In the Department's view, none of the 13 statutory exemptions implies a privilege of non-disclosure.

¶ 99. The Department's non-party brief continues:

> Because the Wis. Stat. § 19.85(1)(c) exemption applies equally to every closed session meeting of every governmental body covered by the open meetings law, the legal principle established by the court of appeals' opinion will apply statewide to all governmental bodies involved in litigation with their former employees, where the substance of the litigation concerns the reasons for the adverse employment action. Unless reversed, the court of appeals' decision is thus likely to affect a large number of actions against government employers.

¶ 100. Conversely, because the Wis. Stat. § 19.85(1) exemptions apply to every closed session meeting of every governmental body covered by the open meetings law, the legal principles established by the majority in its opinion will apply statewide to all governmental bodies involved in litigation . . . and will not be limited to litigation involving "former employees."

¶ 101. In sum, the majority has promulgated a sweeping rule with broad application. The rule has no exceptions. It is not limited to Wis. Stat. § 19.85(1)(c). Instead, the rule precludes any claim of privilege based

---

(h) Consideration of requests for confidential written advice from the government accountability board under s. 5.05 (6a), or from any county or municipal ethics board under s. 19.59 (5).

(i) Considering any and all matters related to acts by businesses under s. 560.15 which, if discussed in public, could adversely affect the business, its employees or former employees.

on the exemptions to the open meetings law stated in Wis. Stat. § 19.85(1). As a result, the content of a closed session discussion under Wis. Stat. § 19.85(1) is likely discoverable, simply by filing a lawsuit.

¶ 102. The full implications of this decision cannot be appreciated without examining, one-by-one, the 13 exemptions in Wis. Stat. § 19.85(1) and surmising how the new discovery rule might be employed in each setting. To illustrate my concern, I will point to three of the exemptions.

¶ 103. First, Wis. Stat. § 19.85(1)(b) authorizes governmental bodies to convene in closed session to "[c]onsider[] dismissal, demotion, licensing or discipline of any public employee or person licensed by a board or commission." This exemption implicates not only teachers, university faculty and staff, fire fighters, and police officers, but also lawyers, doctors, and most other licensed professionals.

¶ 104. Second, Wis. Stat. § 19.85(1)(h)[3] authorizes closed sessions to consider "requests for confidential written advice from the government accountability board under s. 5.05(6a), or from any county or municipal ethics board under s. 19.59(5)." The Government Accountability Board, with its multiple functions, is likely to be a prime target of the new discovery rule because it will be a good place to dig up dirt against candidates for public office.

¶ 105. Third, Wis. Stat. § 19.85(1)(e) authorizes closed sessions for "[d]eliberating or negotiating the purchasing of public properties, the investing of public funds, or conducting other specified public business, whenever competitive or bargaining reasons require a

_____

[3] Wisconsin Stat. § 19.85(1)(h) was amended by 2007 Wis. Act 1, § 133.

closed session." In *State v. Beaver Dam Area Development Corp.*, 2008 WI 90, 312 Wis. 2d 84, 752 N.W.2d 295, a majority of this court determined that a local economic development authority met unlawfully in closed session. This ruling may provide the legal basis for a lawsuit to obtain the substance of the closed meetings.

¶ 106. Although these examples hint at how the majority's ruling may adversely affect deliberations by government bodies and the tenuous relationship these bodies will now have with private individuals and organizations, we need not rely on imagination or speculation.

¶ 107. Consider the Nebraska case of *State ex rel. Upper Republican Natural Resources District v. District Judges of the District Court for Chase County*, 728 N.W.2d 275 (Neb. 2007) (*Upper Republican NRD*), which the majority cites with approval. Majority op. ¶¶ 41–43. In *Upper Republican NRD*, the plaintiffs' complaint alleged that a public natural resources district and its board of directors " 'knowingly engaged in repeated, intentional, and pervasive closed sessions at public meetings at which public policy was debated and discussed' in violation of the Open Meetings Act." *Upper Republican NRD*, 728 N.W.2d at 277. The trial court ordered the public body to "answer *all* questions posed with regard to the closed sessions." *Id.* (emphasis added). The Nebraska Supreme Court agreed with this reasoning. *Id.* at 280. Forcing a government or quasi-governmental body to answer all questions regarding the substance of discussions held in closed session ultimately defeats the purpose of allowing the government to hold such sessions. The striking significance of the present case is that a court may force disclosure of

confidential discussions, even though a governmental body has fully complied with the open meetings law.

¶ 108. Another case cited by the majority with approval, *People ex rel. Birkett v. City of Chicago*, 705 N.E.2d 48 (Ill. 1998), *see* majority op. ¶ 40, is illustrative of the problems that may arise from the majority's rule under Wis. Stat. § 19.85(1)(e).

¶ 109. In *Birkett*, the City of Chicago, which owns and operates O'Hare International Airport, became embroiled in litigation with several municipalities located near O'Hare regarding the City's plans for expanding the airport. *Birkett*, 705 N.E.2d at 55–56. The municipalities sought discovery of all information, documents, records, and discussions that the City had in closed session regarding the planned expansion. *Id.* at 48–49. The Illinois Supreme Court affirmed the trial court's decision to supply the information and rejected any "deliberative process privilege" to protect documents giving "confidential advice." *Id.* at 49–50. It thus disregarded an exemption in the Illinois Freedom of Information Act for "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated." *Id.* at 51 (quoting 5 Ill. Comp. Stat. 140/7(1)(f) (West 1994)).

¶ 110. The dissent by Justice Michael Bilandic was blunt:

> The types of documents sought by the plaintiffs should be protected from disclosure. The affidavits in the record reveal the planning process from which these documents were generated. According to affidavits submitted by various deputy commissioners of the City's department of aviation, the documents requested by the plaintiffs reflect preliminary and predecisional planning deliberations concerning development options

59

and alternatives at O'Hare. Included in these deliberations are opinions expressed during meetings and recommendations by City personnel and hired consultants. The affidavits further state that the documents contain confidential advice given to municipal policymakers evaluating policy options. Such planning documents go to the heart of the City officials' ability to engage in open and honest discussions relating to future planning. I believe that these *officials should be able to discuss all pertinent policy options without fear that their candid assessments of each option's strengths and weaknesses will be disclosed to the airport's opponents.* The affidavits of the deputy commissioners establish the *importance of protecting these airport planning deliberations from disclosure in order to maintain the candid evaluation of proposals within that process.*

*Id.* at 56 (Bilandic, J., dissenting) (emphasis added).[4]

[4] The *Birkett* decision was followed by a decision with a different result. *Thomas v. Page,* 837 N.E.2d 483 (Ill. App. Ct. 2005), involved a defamation suit filed by a sitting justice of the Illinois Supreme Court based upon the publication of certain newspaper articles regarding the supreme court's consideration of a disciplinary proceeding involving the Kane County State's Attorney. *Id.* at 487. During the course of proceedings in the trial court, the defendants issued subpoenas that were served upon the other six Illinois Supreme Court justices and their law clerks seeking the production of all documents referring or relating to the defamation proceedings. *Id.* Additionally, the defendants caused the issuance of subpoenas for the depositions of the sitting justices and their law clerks. *Id.* The subpoenaed parties challenged the subpoenas, and the circuit court certified the question of privilege to the Illinois Appellate Court, Second District. *Id.* at 487–88.

The Illinois Appellate Court, Second District, recognized an absolute judicial deliberation privilege protecting confidential communications among judges and between judges and the court's staff made in the course of the performance of their

¶ 111. In view of decisions like *Birkett,* the continued confidentiality of documents subject to the attorney-client privilege may be compromised, especially if those documents are discussed as part of a deliberative process in statutorily authorized closed meetings.

¶ 112. As demonstrated by the above discussion, the majority's rule in this case is too broad. In the absence of express *legislative* directive, it is unwise for this court, as a policy matter, to conclude that there are *no* "privilege[s] implicit in Wis. Stat. § 19.85 shielding the contents of closed sessions from discovery." Majority op. ¶ 3.

## III. CONSTITUTIONAL AND
## COMMON LAW BACKGROUND

¶ 113. In examining evidentiary privileges, it is useful to set out some constitutional and common law background.

¶ 114. Article XIV, Section 13 of the Wisconsin Constitution reads as follows: "Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

¶ 115. This section was interpreted in *Menne v. City of Fond du Lac,* 273 Wis. 341, 345, 77 N.W.2d 703 (1956):

judicial duties and relating to official court business. *Id.* at 490–91, 493. In doing so, the court distinguished the *Birkett* case on the ground that that case involved the question of one branch of government creating an evidentiary privilege for another branch of government. *Id.* at 490 (citing *People ex rel. Birkett v. City of* Chicago, 705 N.E.2d 48 (Ill. 1998)).

> The common law in effect at the time of the adoption of our state constitution is difficult of definition. We do not think that it is confined to English statutes and the decisions of English courts. . . . Perhaps the term "common law" is broad enough to embrace customs and usages and legal maxims and principles in vogue at that time [statehood].

¶ 116. Although one could cite court decisions to the effect that the common law referred to in Section 13 is the common law "as it existed, modified and amended by English statutes passed prior to the [American] revolution," *Budd v. Hansen*, 11 Wis. 2d 248, 257, 105 N.W.2d 358 (1960) (quoting *Coburn v. Harvey*, 18 Wis. 156 [*147], 162 [*153] (1864)), the better view is that the "common law" includes both pre-statehood English law and pre-statehood common law from other states, inasmuch as our courts have always been free to accept or reject common law from other jurisdictions.

¶ 117. The point of this discussion is that pre-statehood common law, including the common law of evidentiary privileges, continues as part of the law of Wisconsin until such time as it has been displaced by the legislature or modified by court decision or rule.

¶ 118. For centuries there has been an imprecise privilege relating to select governmental information. "The deliberative process privilege originated in the principles underlying the English 'crown privilege.' " Russell L. Weaver & James T.R. Jones, *The Deliberative Process Privilege*, 54 Mo. L. Rev. 279, 283 (1989). The "crown privilege" makes secret such things as parliamentary deliberations, state secrets and papers, confidential proceedings of the Privy Council, and communications by or to public officials in the discharge of their public duties. *Id.* at 283 n.24 (citation omitted).

¶ 119. Part of the "crown privilege" was the protection from disclosure of the speeches of a member of the House of Commons. In *Plunkett v. Cobbett,* 5 Esp. N.P. 136, 170 Eng. Rep. 736 (K.B. 1804), the court held that a witness called to prove the plaintiff's expressions in parliament was privileged from disclosing the tenor of the speeches. *See* 8 Wigmore, *Evidence* § 2378(c), at 794 n.3 (McNaughton rev. 1961).

¶ 120. *McKelvey on Evidence* gives the "crown privilege" a different label: "State Secrets." The treatise provides:

> STATE SECRETS—With respect to public matters, the privilege extends to public officers, their subordinates, and any who may be cognizant of such matters, though not in public office.
>
> . . . .
>
> State secrets consist of communications between public officers, transactions in public bodies, acts of the executive department, information obtained in the course of, or for the purpose of, the enforcement of the criminal law, and other like matters.

John J. McKelvey, *McKelvey on Evidence* §§ 226, 228, at 372 (West Publ'g Co., 2d ed. 1907).

¶ 121. *McKelvey* cites *Worthington v. Scribner,* 109 Mass. 487, 12 Am. Rep. 736 (1872), which reads in part:

> It is the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws. To encourage him in performing this duty without fear of consequences, *the law holds such information to be among the secrets of State,* and leaves the question how far and under what circumstances the names of the informers

and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. Courts of justice therefore will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications.

*Id.* at 488–89 (emphasis added).

¶ 122. *Worthington* cited, among many authorities, *Rex v. Akers,* 6 Esp. 125, 170 Eng. Rep. 850 (1790), which it described as the "earliest case upon the subject." *Worthington,* 109 Mass. at 489. *Worthington,* in turn, has been approvingly cited in the opinions of the Wisconsin Attorney General. *See* 41 Wis. Op. Att'y Gen. 237, 241 (1952).[5]

¶ 123. In his commentaries on evidence, Burr W. Jones, a professor of evidence at the College of Law of the University of Wisconsin and, later, a justice of this court, gives the privilege a still different name: "Privileged communications—Affairs of state." 4 Burr W. Jones, *Commentaries on the Law of Evidence in Civil Cases* § 762(780), at 576 (Bancroft-Whitney Co. 1914) (hereinafter Jones). Jones wrote in part:

The President of the United States, the governors of the several states and their cabinet officers, are not bound to produce papers or disclose information committed to them, in a judicial inquiry, when, *in their own judgment,* the disclosure would, on public grounds, be

---

[5] In 40 Wis. Op. Att'y Gen. 34 (1951), the Attorney General alluded to the "privilege for 'state secrets.' " *Id.* at 38.

> inexpedient. On the same principle, the heads of the
> departments of national or state governments cannot
> be compelled to produce letters or documents as evi-
> dence, when, in their judgment, such production would
> be prejudicial to the public service. Nor can disclosure
> of communications between the heads of the depart-
> ments of state and their subordinate officers be com-
> pelled.

*Id.*, § 762(780), at 577–78 (footnotes omitted). Jones
pointed to "the leading case" in the United States Su-
preme Court, *Boske v. Comingore,* 177 U.S. 459 (1900),
where a collector of internal revenue had been impris-
oned by order of a state court in Kentucky for refusing to
produce to his office certain monthly reports of liquor
manufactured by a certain manufacturer. *Id.* at 462–63.
The Supreme Court ruled that imprisonment was im-
proper and that the documents were "privileged, and to a
certain extent, *quasi*-confidential, communications, the
use of which is limited to the purposes for which they are
made, unless the parties interested consent to a more
extensive use." Jones, *supra,* at 578–79 (summarizing
the holding in *Boske*). Professor Jones noted that the
Wisconsin Supreme Court had followed and cited *Boske*
in *Meyer v. Home Insurance Co.,* 127 Wis. 304, 106 N.W.
1087 (1906). Jones, *supra,* at 578 n.97.

¶ 124. Wigmore's treatise on evidence also recog-
nized the "state secrets" privilege. Although critical of the
privilege early on, Wigmore nonetheless asked: "[I]s
there still a genuine testimonial privilege which is to
protect *public officers* from the disclosure of certain
kinds of *facts or communications received* through their
official duties? Some such privilege undoubtedly exists."
8 Wigmore, *Evidence* § 2378(g), at 792 (McNaughton rev.
1961).

¶ 125. One facet of the "state secrets" privilege is embodied in the United States Constitution in Article I, Section 5, Clause 3, which reads: "Each House shall keep a Journal of its Proceedings, and from time to time publish the same, *excepting such Parts as may in their Judgment require Secrecy . . . .*" (Emphasis added.) The Wisconsin Constitution has a similar provision in Article IV, Section 10: "Each house shall keep a journal of its proceedings and publish the same, *except such parts as require secrecy.* The doors of each house shall be kept open *except when the public welfare shall require secrecy.*" (Emphasis added.)

¶ 126. In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court rejected the President's claim of an *absolute* executive privilege. *Id.* at 707. Nonetheless, it recognized the existence of an executive privilege. *See Id.* at 713–14. Chief Justice Warren Burger wrote of the "valid need for protection of communications between high Government officials and those who advise and assist them in the performance of their manifold duties; the importance of this confidentiality is too plain to require further discussion." *Id.* at 705. Burger added that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *Id.*

¶ 127. In a very significant passage, Burger wrote:

> The expectation of a President to the confidentiality of his conversations and correspondence, *like the claim of confidentiality of judicial deliberations* . . . has all the values to which we accord deference for the privacy of all citizens and, added to those values, is the

66

necessity for protection of the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking.

*Id.* at 708 (emphasis added).

¶ 128. My purpose in reviewing English common law and other sometimes-ancient precedent is not to contend what the law should be but to show what the law once was.

¶ 129. The law has been changed dramatically by the enactment of public records and open meetings laws. The legislature, with the approval of the governor, passed the open meetings law in 1959. Ch. 289, Laws of 1959. The legislature, with the approval of the governor, created exceptions authorizing "executive or closed sessions" for various purposes, including "considering employment, dismissal, promotion, demotion, compensation, licensing or discipline of any public employe or person licensed by a state board or commission or the investigation of charges against such person, *unless an open meeting is requested by the employe or person charged, investigated or otherwise under discussion.*" Wis. Stat. § 14.90(3)(b) (1959) (emphasis added). The 1959 law was popularly known as the "Anti-Secrecy Law." 49 Wis. Op. Att'y Gen. Introduction (1960).

¶ 130. What is astounding about the majority opinion is that it contends that the legislature and the governor preserved *nothing* of the common law privilege of confidential deliberation in the 13 exemptions to the "Anti-Secrecy" open meetings law. Its conclusion is breathtaking because the very first exemption in Wis. Stat. § 19.85(1)(a) authorizes closed sessions for courts.

¶ 131. This court adopted the rules of evidence in 1973, more than a decade after the open meetings law was enacted. The court included elements of the "state

secrets" privilege in Wis. Stat. §§ 905.02, 905.09, and 905.10. There is no logical reason why the legislature did not see a deliberative process privilege as "inherent or implicit" in the exemptions it had created in Wis. Stat. § 19.85(1). It certainly referenced an element of the legislative privilege of "secret" deliberation in Wis. Stat. § 19.81(3).[6]

¶ 132. This court may have full authority to regulate the scope of discovery vis-à-vis courts and judicial branch agencies, but it cannot, by *judicial rule,* wipe out common law privileges that are inherent or implicit in statutes that apply to coordinate branches of government without raising serious separation of powers questions. The majority seems to be saying that a court could order the disclosure of deliberations during a legislative session at which the doors were closed.

¶ 133. This court must also remember the limitations on its rulemaking powers. Wisconsin Stat. § 751.12(1) clearly provides that court rules "shall not abridge, enlarge, or modify the substantive rights of any litigant [including a governmental body in a different branch of government]."

¶ 134. The Federal Advisory Committee's Note to the federal rules on privilege, printed as part of the introduction to Ch. 905, *see* 59 Wis. 2d R1, R102–09, indicates that privileges created by state law are in some instances given greater status than previously in federal courts: "The arguments advanced in favor of recognizing state privileges are: [in part] a state privilege is an essential characteristic of a relationship or

---

[6] Wisconsin Stat. § 19.81(3) reads: "In conformance with article IV, section 10, of the constitution, which states that the doors of each house shall remain open, except when the public welfare requires secrecy, it is declared to be the intent of the legislature to comply to the fullest extent with this subchapter."

status created by state law and thus is *substantive* in the *Erie [R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)] sense." *Id.* at R106 (emphasis added). In *Davison v. St. Paul Fire & Marine Insurance Co.,* 75 Wis. 2d 190, 248 N.W.2d 433 (1977), the court declined to apply retroactively a new statute relating to civil immunity for persons evaluating health care providers and facilities and providing confidentiality of information acquired in such reviews. *Id.* at 199–201. The court explained that "the long expressed general rule cited by this court is that statutes granting or rescinding *substantive rights* will not be given retroactive effect unless such intent was clearly expressed by the legislature." *Id.* at 200 (emphasis added) (citations omitted).

¶ 135. On the basis of *Davison* and the Federal Note, the court cannot dismiss the wiping out of common law privileges affecting other branches of government as non-substantive.

## IV. STATUTORY INTERPRETATION

¶ 136. The majority devotes most of its attention to Wis. Stat. § 905.01, which requires interpretation.

¶ 137. Statutory interpretation is a question of law that requires de novo review. *State v. Waushara County Bd. of Adjustment,* 2004 WI 56, ¶ 14, 271 Wis. 2d 547, 679 N.W.2d 514. The interpretation of a statute begins with its text, and the words of the text, unless otherwise defined, are given their common and ordinary meanings. *State ex rel. Kalal v. Cir. Ct. for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning is plain from the text, the inquiry ceases. *Id.*

¶ 138. The general rule for discovery may be stated as follows: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the

69

subject matter involved in the pending action." Wis. Stat. § 804.01(2)(a). This is a broad right for litigants. *See Crawford ex rel. Goodyear v. Care Concepts, Inc.,* 2001 WI 45, ¶ 13, 243 Wis. 2d 119, 625 N.W.2d 876; *see also* majority op. ¶¶ 17–19. However, this right is not absolute; it is qualified by another's right to a testimonial privilege. *See* Wis. Stat. § 804.01(2)(a).

¶ 139. To protect information from discovery, a party must demonstrate to the court that a privilege applies. *See Phelps v. Physicians Ins. Co. of Wis., Inc.,* 2005 WI 85, ¶ 53, 282 Wis. 2d 69, 698 N.W.2d 643. Here, the District must answer all questions asked in interrogatories unless it can demonstrate a testimonial privilege that applies to the closed session discussions of the Board.

¶ 140. In Wisconsin, testimonial privileges are governed by Wis. Stat. § 905.01. Wisconsin Stat. § 905.01 reads in full:

> Privileges recognized only as provided. Except as provided by or inherent or implicit in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin, no person has a privilege to:
>
> (1) Refuse to be a witness; or
>
> (2) Refuse to disclose any matter; or
>
> (3) Refuse to produce any object or writing; or
>
> (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

¶ 141. Wisconsin Stat. § 905.01 was promulgated by supreme court order in 1973 as part of the revision to the Wisconsin Rules of Evidence. Sup. Ct. Order, 59 Wis. 2d R1, R101 (1973). The terms "implicit" and

"inherent" are not defined by the rule. However, a Judicial Council Committee's Note (Note) was prepared to aid in interpreting the Rule:

> The introductory part of this section has been redrafted to apply to Wisconsin; the four subsections remain the same as the federal rule. Constitutional provisions which relate to admissions or exclusions of evidence are not included in this chapter nor are they affected by this section.

> The phrase "or inherent or implicit in statute" is designed to insure that the "work product" immunity rule and the interpretations of s. 19.21 are unaffected. *State ex rel. Dudek v. Circuit Court [for* Milwaukee County], 34 Wis. 2d 559, 150 N.W.2d 387 (1967); *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 137 N.W.2d 470, [*modified and rehearing denied* 28 Wis. 2d 672,] 139 N.W.2d 241 (1965); *Beckon v. Emery,* 36 Wis. 2d 510, 153 N.W.2d 501 (1967). The Wisconsin "work product" immunity rule like the federal rule originates in the discovery statutes. However, the federal rule has now been incorporated expressly in revised Rule 26(b)(3) of the Federal Rules of Civil Procedure. Wisconsin does not appear to be inconsistent with this manner of restricting privileges. *State v. Driscoll,* 53 Wis. 2d 699, 193 N.W.2d 851 (1972); *State v. Knops,* 49 Wis. 2d 647, 183 N.W.2d 93 (1971). Common law privileges, not originating in the constitution, could not be enlarged on a case by case basis.

> This section recognizes that there are other statutory privileges that are not included in this chapter. However, they are provided for in other statutory provisions. Statutory provision regarding fire marshal reports, s. 165.55 (8) [concerning arson investigations] would not be altered. . . .

Judicial Council Committee's Note, 1974, Wis. Stat. § 905.01, 59 Wis. 2d R1, R101–02.

¶ 142. The majority gives great weight to the Note and relies heavily on it for its ultimate conclusion that Wis. Stat. § 19.85 does not create an inherent or implicit testimonial privilege. *See* majority op., ¶¶ 27–30. It argues, with only a dissenting opinion as support, the following:

> This Judicial Council note reveals that the "inherent or implicit" language in the Rule is quite narrow in scope and was included by this court to preserve a particular work product privilege already recognized at the time this language was added to the statute, while leaving other privileges to be provided for more expressly in other statutory provisions (aside from privileges against Wis. Stat. § 19.35 open records requests, that are still governed by a common law balancing test).

*Id.,* ¶ 27. This passage incorrectly interprets the Note, as well as Wis. Stat. § 905.01.

¶ 143. There is no denying the substance of the first sentence of the Note's second paragraph: "The phrase 'or inherent or implicit in statute' is designed to insure that the 'work product' immunity rule and the interpretations of s. 19.21 are unaffected." Judicial Council Committee's Note, 1974, Wis. Stat. § 905.01, 59 Wis. 2d at R101. However, this sentence requires closer analysis than it has been given to date.

¶ 144. First, Justice Bradley's dissent in *Burnett v. Alt,* 224 Wis. 2d 72, 99–115, 589 N.W.2d 21 (1999) (Bradley, J., dissenting), gives a plainly mistaken spin to the sentence. Justice Bradley wrote:

> According to the Judicial Council's notes on Wis. Stat. § 905.01, the phrase "inherent or implicit" was inserted, not to give a court some device with which to "interpret" additional privileges. Rather, the notes strongly suggest that the phrase was inserted *solely* to protect the

72

"work-product privilege"—a privilege the court created prior to 1973 in *State ex rel. Dudek v. Circuit Court,* 34 Wis. 2d 559, 150 N.W.2d 387 (1967).

*Alt,* 224 Wis. 2d at 101 n.9 (Bradley, J., dissenting) (emphasis added).

¶ 145. By no means does the Note say or imply that the phrase "inherent or implicit" was inserted "solely" to protect the work product privilege. The Note explains that the phrase "is designed to insure that the 'work product' immunity rule *and* the interpretations of s. 19.21 [19.35] are unaffected. . . . This section recognizes that there are *other statutory privileges* that are not included in this chapter. However, they are provided for *in* other statutory provisions." Judicial Council Committee's Note, 1974, Wis. Stat. § 905.01, 59 Wis. 2d R1, R101–02 (emphasis added). The word "solely" is clearly rebutted by the Note itself.

¶ 146. Second, the intent of the Note is illuminated by the fact that the "work product" privilege was not explicit in any statute or rule adopted by the supreme court at the time Wis. Stat. § 905.01 was adopted. The "work product" privilege referenced in the Note was not codified in statute until 1975. Wis. Stat. § 804.01(2)(c)1.; Sup. Ct. Order, 67 Wis. 2d 585, 654–59 (1975); *see* Patricia Graczyk, *The New Wisconsin Rules of Civil Procedure: Chapter 804,* 59 Marq. L. Rev. 463, 470 (1976) ("[S]ubsection (2)(c) codifies [the work product] doctrine.").[7] The Judicial Council Notes describe

---

[7] Specifically, a set of proposed rules, including Wis. Stat. § 804.01(2)(c)(1), were presented to this court on November 1, 1973, and hearings were held on the proposals with modifications made to them throughout 1974. *See* 67 Wis. 2d at v (Preface). Finally, on February 17, 1975, the rules were adopted and they became effective January 1, 1976. *Id.* Again, this

the "work product" privilege as *originating* in the discovery statutes, i.e., inherent or implicit in discovery statutes. In the eventual codification of the privilege in Wis. Stat. § 804.01(2)(c)1., the court did not use the word "privilege."

¶ 147. Third, the Note observes that Wis. Stat. § 905.01 "recognizes that there are other statutory privileges that are not included in this chapter [Chapter 905, Wisconsin Rules of Evidence]." Judicial Council Committee's Note, 1974, Wis. Stat. § 905.01, 59 Wis. 2d at R101. They are provided for in other statutory provisions. As an example, the statutory provision regarding fire marshal reports, Wis. Stat. § 165.55(8) (relating to arson investigations) "would not be altered." *Id.* at R102. This passage suggests that the privilege contained within Wis. Stat. § 165.55(8) is not affected by the passage of Wis. Stat. § 905.01. *See Gilbertson v. State,* 205 Wis. 168, 171, 236 N.W. 539 (1931); *Black v. General Elec. Co.,* 89 Wis. 2d 195, 205, 278 N.W.2d 224 (Ct. App. 1979) ("Once the secrecy privilege is exercised by the State Fire Marsha[l], courts cannot force deputy fire marsha[ls] to testify concerning investigations of the origins of specific fires").

¶ 148. The fire marshal's "privilege" referenced by the Note, however, is not explicit in that statute; thus, it must be *inherent or implicit* therein. *See* Wis. Stat. § 165.55(8) ("All investigations held by or under the direction of the state fire marshal, or his or her subordinates, may, in the fire marshal's discretion, be private,

---

timeline for the adoption of the work product privilege statute under Wis. Stat. § 804.01(2)(c)(1) demonstrates that the privilege was not included in a statute nor any court rule at the time Wis. Stat. § 905.01 was adopted on April 16, 1973, effective January 1, 1974. *See* 59 Wis. 2d at Riv (Foreword).

and persons other than those required to be present may be excluded from the place where such investigation is held . . . .").

¶ 149. Because the fire marshal's privilege is not explicit in the statute, *see id.,* and because the Note expressly states that the privilege implicit in the statute will not be affected by Wis. Stat. § 905.01, Judicial Council Committee's Note, 1974, Wis. Stat. § 905.01, 59 Wis. 2d at R102, this paragraph of the Note confirms that the "inherent or implicit in" language is not designed to protect the work product privilege alone.

¶ 150. The majority relies on a Note that has no force of law.[8] 59 Wis. 2d at Rv (Editor's Note) ("[N]either the commentary of the Federal Advisory Committee nor that of the Wisconsin Judicial Council Evidence Committee is adopted. They are *printed for information purposes. . . .* Judicial consideration of the interpretation given as reflected in each comment will be made by the Supreme Court on a case-by-case basis.") (emphasis added); *see also Kalal,* 271 Wis. 2d 633, ¶ 69 (Abrahamson, C.J., concurring) ("The Judicial Council notes appear with the text of the rules and laws in the Wisconsin Statutes, but neither the court nor the legislature ordinarily adopts the Notes as part of the statute or rule.") (citations omitted). The majority should have relied upon the plain language of Wis. Stat.

---

[8] One who wishes to rely on the Note must take into account the sentence: "Common law privileges, not originating in the constitution, could not be enlarged on a case by case basis." Judicial Council Committee's Note, 1974, Wis. Stat. § 905.01, 59 Wis. 2d R1, R101.

Prohibiting *enlargement* of a common law privilege is quite different from prohibiting *enforcement* of a common law privilege if that privilege is inherent or implicit in a statute or court rule.

§ 905.01, giving each word its common and ordinary meaning, to determine how the phrase "inherent or implicit in" should be interpreted. *Kalal*, 271 Wis. 2d 633, ¶ 45.

¶ 151. Two undefined words—"inherent" and "implicit"—are central to the interpretation of Wis. Stat. § 905.01.

¶ 152. The root word for "inherent" is "inhere." *See Webster's New Collegiate Dictionary* 593 (1977) ("[T]o be inherent."). It is defined by *Black's Law Dictionary* as a verb that means "[t]o exist as a permanent, inseparable, or essential attribute or quality of a thing," *Black's Law Dictionary* 787 (7th ed. 1999); *see also Webster's, supra,* at 593 (defining "Inherent" to mean "involved in the constitution or essential character of something"); *Random House Unabridged Dictionary* 982 (2d ed. 1993) (defining "Inherent" as "existing in someone or something as a permanent and inseparable element, quality, or attribute").

¶ 153. The other word is "implicit." "Implied" means "[n]ot directly expressed." *Black's, supra,* at 757; *see also Webster's, supra,* at 576 (defining "Imply" to mean "express[ed] indirectly"); *Random House, supra,* at 961 (defining "Imply" as "indicat[ing] or suggest[ing] without being explicitly stated"). The *American Heritage Dictionary* defines "implicit" as "[i]mplied or understood though not directly expressed" or "[c]ontained in the nature of something though not readily apparent." *The American Heritage Dictionary of the English Language* 906 (3d. ed. 1992).

¶ 154. Taking these definitions and applying them to Wis. Stat. § 905.01 results in a rule that requires all testimonial privileges to be provided by, essential to, or expressed indirectly by the statute or supreme court rule at issue. *See* Wis. Stat. § 905.01;

*Black's, supra,* at 757, 787; *Webster's, supra,* at 576, 593. This is the plain meaning of the statute as written. Because Wis. Stat. § 905.01 is not ambiguous, the inquiry into the Note is not necessary, *see Kalal,* 271 Wis. 2d 633, ¶ 45, and it should not be permitted to override the meaning of clear text.

¶ 155. This plain meaning interpretation of the statute is supported by our case law. In *Alt,* this court found a testimonial privilege for expert witnesses to be "inherent in Wis. Stat. § 907.06." *Alt,* 224 Wis. 2d at 86.

¶ 156. In *Alt,* the plaintiffs attempted to compel the expert testimony of a local doctor who refused to serve as a witness. *Id.* at 79–80. The doctor claimed he was privileged from giving testimony due to the language in Wis. Stat. § 907.06(1), *see id.* at 84, which states, "An expert witness shall not be appointed by the judge *unless the expert witness consents to act." Id.* at 85–86 (quoting Wis. Stat. § 907.06(1)). The doctor argued that, although no privilege was expressly stated in the statute, the statute implied a testimonial privilege as contemplated by Wis. Stat. § 905.01. *Id.* at 84–85. In its decision, this court agreed and concluded "that this express grant [that an expert may not be appointed without consenting] implies a privilege to refuse to testify if the expert is called by a litigant. . . . *Any other result would be inconsistent and fly in the face of logic." Id.* at 86 (emphasis added).

¶ 157. *Alt* remains good law. This is evidenced by this court's citation to *Alt* in the unanimous decision of *Glenn v. Plante,* 2004 WI 24, 269 Wis. 2d 575, 676 N.W.2d 413:

> In Wisconsin, a person may not refuse to be a witness, "(e)xcept as provided by or inherent or implicit in statute or in rules adopted by the supreme court or

77

■■■■■■■■

required by the constitution of the United States or Wisconsin. . . ." Wis. Stat. § 905.01 (2001–02). *See also Alt*[,] 224 Wis. 2d at 85. Wisconsin Stat. § 907.06 implicitly provides expert witnesses with such a privilege. . . . We have concluded that, implicit in this statutory language, an expert witness has the privilege to refuse to testify if he or she is called by a litigant. *Alt,* 224 Wis. 2d at 86.

*Id.,* ¶ 21 (footnote omitted); *see also Carney-Hayes v. Nw. Wis. Home Care, Inc.,* 2005 WI 118, ¶¶ 18–35, 284 Wis. 2d 56, 699 N.W.2d 524.

¶ 158. *Alt* and its progeny demonstrate that a plain language interpretation of Wis. Stat. § 905.01 is consistent with the way this court has interpreted the "inherent or implicit in" language of the statute. The majority's interpretation, embracing Justice Bradley's dissent in *Alt,* is erroneous.

¶ 159. In my view, a plain language reading of the words "inherent or implicit" in Wis. Stat. § 905.01 not only permits but requires the recognition of a testimonial privilege to protect the contents of closed sessions authorized by Wis. Stat. § 19.85(1) because that privilege is essential to or expressed indirectly by the language of the statute.

## V. THE DELIBERATIVE PROCESS PRIVILEGE

¶ 160. What is the nature of the privilege inherent or implicit in Wis. Stat. § 19.85(1)(c)? I conclude that the legislature intended to create a deliberative process privilege to foster candid deliberations in closed session in specific, enumerated situations authorized by statute. This privilege protects the confidentiality of what is said in deliberation. It does not protect the identity of who was present. That is a fact.

78

¶ 161. *McCormick on Evidence* discusses the nature of the deliberative process privilege. *See* 1 John W. Strong, *McCormick on Evidence* § 108(a), at 430–32 (5th ed. 1999). "Th[e] privilege protects communications made between governmental personnel, or between governmental personnel and outside consultants." *Id.* at 430. The privilege "seeks to encourage a free flow of communication in the interest of some larger end—[namely,] establishing agency policy only after consideration of the full array of contrasting views on the subject." *Id.* "[T]he assumption is that total candor will be enhanced, and the quality of governmental decision-making correspondingly improved, by an assurance of at least qualified confidentiality." *Id.* at 430–31.[9]

¶ 162. A deliberative process privilege has been recognized in several jurisdictions, including numerous federal courts. *See, e.g., NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975); *In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997); *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993); *Tennessean Newspapers, Inc. v. FHA,* 464 F.2d 657, 660 (6th Cir. 1972); *Int'l Paper Co. v. Fed. Power Comm'n,* 438 F.2d 1349, 1358–59 (2d Cir. 1971); *Daily Gazette Co., Inc. v. W. Va. Dev. Office,* 482 S.E.2d 180, 188–89 (W. Va. 1996);

---

[9] The *Bender's Forms of Discovery* treatise acknowledges an "official information privilege" for confidential governmental business. *See* 12 *Bender's Forms of Discovery* § 5.08[3], at 5–120—5–131 (Matthew Bender & Co., Inc. 2007). "[T]he purpose of the official information privilege is to foster the process of governmental decision-making by shielding from disclosure the flow of ideas and advice among government officials." *Id.* at 5–120 (citing *Nixon v. Freeman,* 670 F.2d 346, 355 (D.C. Cir. 1982), *cert. denied sub. nom. Nixon v. Carmen,* 459 U.S. 1035 (1982)).

*Capital Info. Group v. Office of the Governor,* 923 P.2d 29, 33–34 (Alaska 1996); *McClain v. College Hosp.,* 492 A.2d 991, 998 (N.J. 1985); *Hamilton v. Verdow,* 414 A.2d 914, 924 (Md. 1980); *State ex rel. Att'y Gen. v. First Judicial Dist. Ct.,* 629 P.2d 330, 334 (N.M. 1981); *see also, Lang v. Kohl's Food Stores, Inc.,* 186 F.R.D. 525, 532 (W.D. Wis. 1998).

¶ 163. The deliberative process privilege has been said to protect from discovery intra-agency discussions that are pre-decisional and deliberative to ensure that the agencies are not "forced to operate in a fishbowl." Michael N. Kennedy, Comment, *Escaping the Fishbowl: A Proposal to Fortify the Deliberative Process Privilege,* 99 Nw. U. L. Rev. 1769, 1772–74 (2005) (quoting *EPA v. Mink,* 410 U.S. 73, 87 (1973)). This privilege allows the intra-agency discussions to be open and frank, enabling the agency to reach the proper determination without outside, undue influence. *See Russell v. Dep't of the Air Force,* 682 F.2d 1045, 1048 (D.C. Cir. 1982).

¶ 164. For purposes of this case, however, we have no need to explore a deliberative process privilege that goes beyond the protection from disclosure of the substance of deliberations in statutorily authorized closed sessions on statutorily authorized subjects.

¶ 165. The deliberative process privilege can be overcome, on a case-by-case basis, by a litigant's sufficient showing of *need* for the information requested. *In re Sealed Case,* 121 F.3d at 737; *Lang,* 186 F.R.D. at 532 ("The privilege may be overcome by a sufficient showing of particularized need outweighing the reasons for confidentiality."). The factors considered by the courts in determining whether the privilege can be overcome by the circumstances of a case include the following: (1) "the *relevance of the evidence sought* to be pro-

tected;" (2) "the *availability of other evidence;*" (3) "the *'seriousness' of the litigation and of the issues* involved;" (4) "the *role of the government in the litigation;*" and (5) "the *possibility of future timidity by government employees* who will be forced to recognize that their secrets are violable." *In re Franklin Nat'l Bank Sec. Litig.,* 478 F. Supp. 577, 583 (E.D.N.Y. 1979) (emphasis added) (citations omitted). This analysis strikes a fair balance between the government's need to deliberate and discuss internal policy privately, as is allowed by Wis. Stat. § 19.85(1), and a litigant's ability to discover relevant information when it is necessary to prove her case.

¶ 166. Recognizing a qualified testimonial privilege inherent or implicit in Wis. Stat. § 19.85(1)(c) stays true to the language of Wis. Stat. § 905.01 ("Except as provided by or inherent or implicit in statute or in rules adopted by the supreme court . . . no person has a privilege . . . .") and gives full force and effect to the policy underlying Wis. Stat. § 19.85(1)(c)—allowing governmental bodies to meet in closed session to discuss and deliberate prior to promulgating a final decision. *See Kalal,* 271 Wis. 2d 633, ¶ 44.

¶ 167. The policy embodied by this privilege was alluded to by Justice Stanley Reed, sitting by assignment in the United States Court of Claims. Justice Reed said:

> Free and open comments on the advantages and disadvantages of a proposed course of governmental management would be adversely affected if the civil servant or executive assistant were compelled by publicity to bear the blame for errors or bad judgment properly chargeable to the responsible individual with power to decide and act. Government from its nature has necessarily been granted a certain freedom from control

beyond that given the citizen. It is true that it now submits itself to suit but it must retain privileges for the good of all.

There is a public policy involved in this claim of privilege ... —the policy of open, frank discussion between subordinate and chief concerning administrative action.

*Kaiser Aluminum & Chem. Corp. v.* United States, 157 F. Supp. 939, 945–46 (Ct. Cl. 1958).

¶ 168. It was also explained by Judge Carl McGowan of the United States Court of Appeals for the District of Columbia Circuit:

The basis of ... the privilege ... is the free and uninhibited exchange and communication of opinions, ideas, and points of view—a process as essential to the wise functioning of a big government as it is to any organized human effort. In the Federal Establishment, as in General Motors or any other hierarchical giant, there are enough incentives as it is for playing it safe and listing with the wind; Congress clearly did not propose to add to them the threat of cross-examination in a public tribunal.

*Ackerly v. Ley,* 420 F.2d 1336, 1341 (D.C. Cir. 1969).

¶ 169. Finally, Judge George Edwards, Jr. of the United States Court of Appeals for the Sixth Circuit summed up the policy in these words:

Congress undertook to protect the decision making processes of government agencies. Government policy makers (at whatever level) when assigned to mutual consultation and full debate on a decision should not be limited in thought or expression to just those preliminary views which they were prepared to defend in the public prints. Many a quick comment—which in itself reveals lack of full consideration and thought—

nonetheless may shed continuing and useful illumination on the problem at hand. No one needs to remind the courts of the value of advocacy, confrontation and debate. These are the recognized tools of the judicial fact finding process and they are frequently involved in judicial decision making too. We would not fail to protect their availability to another branch of government.

*Tennessean Newspapers, Inc.*, 464 F.2d at 660.

¶ 170. Would that Judge Edwards could weigh in on this case.

## VI. CONCLUSION

¶ 171. After today's decision, legitimate, independent plaintiffs are likely to be able to discover closed session discussions of governmental bodies, but so will third-party organizations, deep-pocketed individual plaintiffs with political or economic agendas, and the simply curious. This litigation will lead to unwarranted disclosure of confidential pre-decisional deliberations, and have a chilling effect on such deliberations.

¶ 172. Contrary to the majority, I conclude that there is a qualified testimonial privilege inherent in Wis. Stat. § 19.85(1) that allows governmental bodies and their employees to withhold the content of pre-decisional, deliberative discussions that take place during the body's properly held closed sessions. I do not understand how disclosing the deliberations of the Whitnall School Board will affect the determination of whether Dr. Sands was an administrator. Thus, I do not see why the deliberative process privilege of the Board should be overcome.

¶ 173. For the reasons stated, I respectfully dissent.